A94A1244, A94A1245. BUTLER v. SOUTH FULTON MEDICAL CENTER, INC. (two cases).
A94A1246. SOUTH FULTON MEDICAL CENTER, INC. v. BUTLER.
(452 SE2d 768)

JOHNSON, Judge.

In 1988, Charlotte Butler sought treatment for relief of chronic pain she had begun to experience in her left chest and rib-cage area after undergoing surgery, radiation and chemotherapy treatments for breast cancer during 1986. She was referred by her oncologist to Dr. Jong-In Kim, a member of South Fulton Anesthesia Associates and an anesthesiologist working as an independent contractor at South Fulton Medical Center, Inc. ("South Fulton"). Dr. Kim administered epidural steroid injections to Butler on January 20, 1988 and February 17, 1989. In September 1989, when the steroid injections failed to give long-term relief, Dr. Kim gave Butler a thoracic sympathetic block or neurolytic block, which, unlike the two previous steroid injections, was an injection of the nerve-destroying agent phenol. In January 1990, Kim performed a second neurolytic block on Butler, following this procedure almost immediately, in February 1990, with a third neurolytic block.

In August 1990, Butler called Dr. Kim requesting additional treatment for her pain. Although the consent form filled out by the hospital nursing staff and signed by Butler identified this last procedure as an "epidural steroid injection," Dr. Kim actually administered a fourth neurolytic block using the agent phenol. The injection was administered too close to Butler's spinal cord. The phenol penetrated into the spinal cord where it did massive damage which rendered Butler a ventilator-supported C-1 quadriplegic.

Butler settled her claim against Dr. Kim, and subsequently filed this action against South Fulton alleging the hospital was negligent in two ways: 1) the hospital's nursing staff did not fulfill their duties and obligations with regard to the obtaining of consent forms from Butler; and 2) the hospital failed to adequately supervise Dr. Kim in that it allowed him to perform sympathetic neurolytic blocks without the requisite credentials. The trial court granted South Fulton's motion

for summary judgment as to Butler's claim that it negligently hired and supervised Dr. Kim. The court denied the parties' cross-motions for summary judgment on Butler's contentions that South Fulton was negligent in failing to obtain a consent form for the neurolytic block procedure performed and in obtaining a consent form for the wrong procedure.

Because a history showing the procedures performed by Kim upon Butler in chronological order is helpful in understanding the course of Butler's treatment for chronic pain, the chart below identifies the procedures performed on particular dates as well as how the procedures were identified on the consent forms:

| Date of Procedure | Procedure Identified on Consent Form | Procedure Performed |
| --- | --- | --- |
| January 20, 1988 | "epidural block" | steroid injection |
| February 17, 1989 | "epidural block and subcutaneous epidural catheter implant" | steroid injection |
| September 12, 1989 | "thoracic phenol block" | neurolytic block |
| January 5, 1990 | no consent form signed | neurolytic block |
| February 6, 1990 | "nerve block" | neurolytic block |
| August 22, 1990 | "epidural steroid injection" | neurolytic block |

It is significant that in her deposition taken on October 6, 1993, Butler testified that she never read any of these consent forms before she signed them. It is also clear from her deposition testimony that Dr. Kim never told her anything specific about any of the procedures he performed in his effort to relieve her chronic pain. For example, the only thing he told her when he changed the course of treatment from steroid injection to phenol block was that he was going to change the medicine he was injecting to give her longer relief. Butler candidly acknowledged that she did not know the difference in the various procedures Dr. Kim performed on her, and that she was relying upon him to select the procedure that was right for her.

## Case No. A94A1244

1. Butler asserts the trial court erred in granting South Fulton's motion for summary judgment as to its liability for negligent hiring and/or supervision of the doctor who administered the neurolytic block procedure.

South Fulton introduced evidence establishing there were no preexisting circumstances in Dr. Kim's work history which should have put it on notice as to any incompetency with regard to administration of a neurolytic block and that he had the requisite training and credentials to perform the procedure. This evidence shifted the burden

of proof to Butler. See *Perryman v. DeKalb County Hosp. Auth.*, 197 Ga. App. 505, 506 (1) (398 SE2d 745) (1990). Butler introduced the affidavit of Dr. Bettinger, who gave his opinion that, based on Butler's condition, Dr. Kim lacked the requisite credentials to perform neurolytic blocks.

*Candler Gen. Hosp. v. Persaud*, 212 Ga. App. 762, 766 (2) (442 SE2d 775) (1994), upon which Butler relies, acknowledges that a hospital owes a duty to patients to act in good faith and with reasonable care to ensure that a doctor is qualified to practice the procedure he was granted privileges to perform. In *Candler*, the plaintiffs alleged that the hospital had no credentialing process to assure the doctor was qualified to perform the particular procedure. (They did not allege negligent hiring or supervision, as in this case.) The court applied the principle stated by the Supreme Court in *Mitchell County Hosp. Auth. v. Joiner*, 229 Ga. 140 (189 SE2d 412) (1972), that a hospital has authority to examine the qualifications of a physician seeking staff privileges and to limit the privileges to areas it deems the physician qualified for. The surgeon in *Candler* had applied for temporary privileges to perform a certain procedure and had been granted the same by the hospital's president the same day. There was a question of fact as to whether this was done negligently. In this case, however, there is absolutely no evidence that the hospital should have required Dr. Kim, an anesthesiologist, to obtain specific privileges to perform neurolytic blocks. Furthermore, *Candler* neither rejects *Perryman*, supra, nor overrules *Sheffield v. Zilis*, 170 Ga. App. 62 (316 SE2d 493) (1984), in which summary judgment for the hospital was affirmed once it had been established that the hospital had a procedure in place, approved by the Joint Commission for the Accreditation of Hospitals, for evaluating the credentials of staff physicians and that the hospital did not undertake to direct the doctor in the way or manner in which he treated the patient. Those factors are present in this case as well. South Fulton had, and followed with respect to Dr. Kim, a procedure approved by the Joint Commission for evaluating the credentials of staff physicians. It did not undertake to direct Dr. Kim in the way or manner in which he treated Butler or other patients. We conclude the trial court did not err in granting South Fulton's motion for summary judgment on the negligent hiring or negligent supervision issue.

2. Butler asserts the trial court erred in denying her motion for summary judgment as to her negligence claim against South Fulton for failing to obtain a valid consent form. Pretermitting whether a hospital has a statutory duty to obtain a consent form under either OCGA § 31-9-6.1 or the more general terms of OCGA § 31-9-6, it is clear that South Fulton was obligated to ensure that an executed consent form for medical procedures in operating rooms was in the pa-

tient's records pursuant to its own Policy & Procedure Manual as well as under the Federal Regulatory Standards promulgated by the Joint Commission, which had been adopted by South Fulton.

In obtaining a consent form, a nurse is not acting as a "borrowed servant" of the doctor, but as an employee of the hospital because the task of obtaining a properly executed form is administrative and does not involve professional medical skill or judgment. See *Hoffman v. Wells*, 260 Ga. 588, 590 (2) (397 SE2d 696) (1990); *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234 (367 SE2d 793) (1988). "A hospital has a responsibility for the exercise of due care by a nurse as well as by other hospital employees while she is performing acts of a character which, though constituting a part of the patient's treatment as prescribed by the attending physician, do not require either the application or the understanding of the specialized technique possessed by a skilled physician or surgeon." (Citation and punctuation omitted.) *Richmond County Hosp. Auth. &c. v. Dickerson*, 182 Ga. App. 601, 604 (3) (356 SE2d 548) (1987). The verification that a consent form has been properly executed and is part of the patient's records does not require application of medical judgment and the hospital may be liable under some circumstances for the nurses' failure to obtain the form in violation of its internal procedure.

This court recently reversed a trial court's summary adjudication that a hospital had no duty to a patient to ensure that a consent form accurately reflected the procedure to be performed. *Marsh v. Crawford Long Hosp. &c.*, 213 Ga. App. 262, 263-264 (1) (444 SE2d 357) (1994). However, unlike the situation in *Marsh v. Crawford Long*, supra, where the nurses assisting in the operating room knew that the doctor was performing a different and more radical procedure than the one listed on the consent form yet raised no question about whether the doctor was performing the correct procedure, the nurse who had Butler sign the consent form was not present during the procedure, and the nurses assisting Dr. Kim did not know that the procedure being performed was not the same as the procedure listed on the consent form.

Even were we to decide, as a matter of law, that South Fulton's rules created a duty to Butler, the failure of the nurses to comply with a rule of the hospital does not give rise to negligence per se. See *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 178 (1) (325 SE2d 844) (1984). Nor does a violation of a hospital policy, even if negligent, authorize a conclusion that the breach of that duty was the proximate cause or a contributing proximate cause of Butler's injury as a matter of law. Butler candidly acknowledges that she signed each and every one of the consent forms, those which correctly described the procedure as well as those which incorrectly or incompletely described the procedure, without reading even one. She also acknowl-

edges that she did not know and did not ask the difference between an epidural steroid injection and a neurolytic block, and that, to her, they were all simply nerve blocks designed to relieve her pain. Therefore, we conclude the trial court properly denied Butler's motion for summary judgment with regard to this issue. Butler's testimony as to these issues will be further explored with regard to the trial court's denial of the hospital's motion for summary judgment.

## Case No. A94A1245

3. In the cross-appeal, South Fulton asserts the trial court erred in finding that genuine issues of material fact remain regarding the proximate cause of Butler's injuries because Butler admitted she did not read the consent form for the procedure.

At the outset, we agree with the trial court that OCGA § 31-9-6.1 does not apply under the undisputed facts in this case. That section applies only when a patient (a) undergoes "any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia," or (b) undergoes "an amniocentesis diagnostic procedure or a diagnostic procedure which involves the intravenous or intraductal injection of contrast material." The thoracic sympathetic neurolytic block to relieve pain does not fall under OCGA § 31-9-6.1. Thus the hospital's argument that the nurse acts only for the doctor in obtaining consent and advising the patient about risks of a procedure fails, and OCGA § 31-9-6 is the applicable Code section. Nevertheless, the hospital is entitled to summary judgment for the reasons set forth below.

In its order denying summary judgment, the trial court found a "jury issue exists regarding proximate cause because Butler testified, among other things, that she never would have consented to this neurolytic block procedure." Our review of Butler's deposition, however, reveals that she stated she did not read any of the consent forms which she signed. She testified she did not appreciate the difference between a thoracic phenol block and an epidural block and that if the consent form presented to her on that day had stated she was to receive a phenol block she would not have understood what it meant. When asked if she would have signed the consent form if it had said she was to receive a phenol block, she stated: "If I had known what it would do, I wouldn't." This statement clearly goes to whether Butler had been informed by her physician of the risks associated with the procedure. To the extent there is a duty in Georgia pursuant to OCGA §§ 31-9-6 or 31-9-6.1 to disclose risks associated with a procedure performed by a doctor, that duty rests squarely upon the doctor. See *Parr v. Palmyra Park Hosp.*, 139 Ga. App. 457 (228 SE2d 596) (1976). Although Butler states she would have asked the doctor the

difference between the two procedures if it had been on the consent form, in light of her admission that she did not read any of the forms, this testimony is irrelevant. We must also point out that she in fact had been presented with a form which correctly identified the procedure when she underwent a thoracic phenol block performed by Dr. Kim in September 1989, and did not read it or ask the doctor about it.

"If an injury would have occurred notwithstanding alleged acts of negligence of the defendant, there could be no recovery in an action for negligence." (Citations and punctuation omitted.) *Jones v. Central of Ga. R. Co.*, 192 Ga. App. 806, 807 (386 SE2d 386) (1989). Given the undisputed facts of this tragic case, it is clear the sole proximate cause of Butler's injury was that Dr. Kim unsuccessfully performed a procedure he had previously performed successfully upon her. In view of the fact that she admits she did not read any of the consent forms, including the one involved here, it is clear that she would have been injured even if the correct procedure had been listed. We also note that only if the nurse, through negligence, puts the wrong procedure on the form and the physician follows the form, thereby committing malpractice, would the nurse's/hospital's negligence be the proximate cause of the malpractice. Here the form had nothing to do with what the physician did. Any negligence of the hospital's employees regarding the consent form was therefore eliminated as a proximate cause of Butler's injuries. It is clear, as the trial court noted, that she would never have agreed to the procedure had she known that it carried the risk of quadriplegia. Sadly, however, she would have known had her treating physician explained to her what he was doing and the risks involved. Fortunately, she has been able to recover from her physician.

If liability was triggered by tragic circumstances alone this would be an easy case. As it is, we must find that the trial court's denial of South Fulton's motion for summary judgment was error and is hereby reversed.

4. Case No. A94A1246, being identical to A94A1245, is hereby dismissed.

*Judgment affirmed in Case No. A94A1244; reversed in Case No. A94A1245. Appeal dismissed in Case No. A94A1246. McMurray, P. J., Birdsong, P. J., Andrews, Smith and Ruffin, JJ., concur. Pope, C. J., Beasley, P. J., and Blackburn, J., dissent in part.*

BEASLEY, Presiding Judge, dissenting in part.

I respectfully dissent. There was expert opinion evidence that the hospital was negligent in permitting an anesthesiologist with Dr. Kim's experience and training to perform neurolytic blocks. Dr. Kahn, a physician (board certified in internal medicine) who is senior

vice-president for medical affairs and medical director of a hospital, testified that a hospital's credentialing procedure would list the medical procedures which the anesthesiologist was qualified by training and experience to do and was thus credentialed to perform in the hospital. Dr. Bettinger (board certified in anesthesiology) stated in affidavit that Dr. Kim's personnel record did not show that he possessed the requisite specialized training or experience to perform the very risky thoracic sympathetic neurolytic blocks to which he subjected Ms. Butler and that the hospital therefore should have limited his privileges to exclude this procedure. This was not overcome by conclusive evidence that he was in fact qualified and authorized to perform such procedures at the hospital. However, plaintiff does not allege in her complaint that this was a negligent act or proximately caused her injuries. Compare *Candler Gen. Hosp. v. Persaud*, 212 Ga. App. 762 (442 SE2d 775) (1994), where it was properly pled (nonprecedential). As recognized and applied in that case, id. at 765, the Georgia Supreme Court established "the doctrine of independent negligence" in *Mitchell County Hosp. Auth. v. Joiner*, 229 Ga. 140, 142 (189 SE2d 412) (1972). It is that the hospital has both the authority and the commensurate responsibility to examine the qualifications of any physician seeking staff privileges and to limit the physician's practice to those areas in which he or she is deemed qualified to practice.

As to the hospital's duty, through its nurses, to assure that the procedure to be performed is the one consented to by the patient, Dr. Kahn in affidavit stated that the hospital deviated from the requisite standard of care. He stated that the nurses failed "to notify the hospital administration, hospital staff officer, head nurse, or other appropriate supervisory authority that Dr . . . Kim intended to perform a different procedure than the one for which the patient gave permission," in that the consent form was for an "epidural steroid injection" whereas he stated he intended to perform a "neurolytic thoracic sympathetic ganglion block."

Dr. Kahn deposed that the nurses failed to recognize that the consent was not for the procedure being undertaken, failed to call it to the attention of the physician and to the hospital authority if not corrected, that one such procedure was undertaken with no consent form, and that all of this deviated from the standard of care for such hospitals.

Appellant refers also to the deposition of Nurse D'Agostino in regard to what is required of nurses, but her deposition is not in the record. However, her affidavit states that the requisite standard of care required the nursing staff to call to the attention of the doctor, and to a nursing supervisor or the hospital administration if not rectified by the doctor, that his stated intention to perform a neurolytic

block when he instructed the nursing staff to obtain phenol was different than appeared on the patient's consent form. She also stated that the nursing staff has a duty to call to the attention of the doctor and to the hospital administration the absence of a consent form, that the nurses have a duty to assure that the proper form is present, and that this was not done in plaintiff's case.

In *Hoffman v. Wells*, 260 Ga. 588 (397 SE2d 696) (1990), the Supreme Court held that the hospital was not liable as a matter of law because the determination to proceed with the surgery which was different from what was on the consent form was a medical decision made by the doctor in the operating room after the nurse informed him of the discrepancy. In the instant case, there is no evidence that any of the nurses raised any question when it appeared from the doctor's order of phenol and the indications that a phenol block was being done that this was not the procedure appearing on the consent form. "A hospital owes a duty of reasonable care to its patients and is liable for the injuries negligently inflicted upon its patients by the nurses and other employees of the hospital. [Cit.]" Id. at 589. Reporting or calling attention to the discrepancy would be an administrative task, although the knowledge that there was a discrepancy would arise from the nurse's professional skill and training. " 'There is no transfer of liability for the negligence of an employee in the performance of clerical or administrative tasks not requiring the exercise of medical judgment even though these tasks are related to the treatment of the patient.' [Cit.]" Id. at 590. I cannot say that it is conclusive as a matter of fact that the doctor would have proceeded nevertheless; we do not know what would have transpired. In any event, *Hoffman* does not indicate that there is no duty on the hospital, through its nurses, to assure that the procedure undertaken is that for which there is a consent.

In *Marsh v. Crawford Long Hosp.*, 213 Ga. App. 262 (444 SE2d 357) (1994), the hospital's nursing staff never discussed with the doctor or the patient the discrepancies in the records with respect to what was consented to and what was to be performed. The court regarded this as a clerical or administrative task and held that the trial court erred in determining that the hospital owed no duty to the patient in these regards. While the evidence in this case indicates that the patient would not have known the difference, the doctor certainly did. As in that case, so in this, "it is for the jury to determine whether [the hospital] breached its duty of reasonable care." Id. at 264. Since there is some evidence that the nurses did not exercise " 'that reasonable degree of care and skill ordinarily exercised by members of the nursing profession generally under conditions and similar and surrounding circumstances,' " *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 149 (416 SE2d 127) (1992), and the duty here subject is

administrative, the hospital is not entitled to summary judgment. Both *Hoffman* and *Marsh* imply that the duties with respect to the consent form do not lie exclusively with the physician except for the clerical duty of obtaining it from the patient.

As pointed out by the trial court in this case, "[d]efendant hospital's own procedures state that the operating room records should include . . . consent forms," and the fact that the nurses in the operating room were different than the nurse who obtained the consent form did not relieve the hospital of checking to assure that the form was completed and matched the procedure to be undertaken. I agree with the trial court that "[t]his in no way suggests that the hospital nurse is responsible for deciding what medical treatment should be given. However, the defendant hospital's own procedures require verification that a patient's consent form is in the hospital chart. Here, two nurses in the operating room testified that they knew the difference between a steroid epidural injection and a thoracic neurolytic block, but they never reviewed the consent form." If a jury finds that this constituted negligence, then it would fall within the hospital's area of liability, if proximate cause is shown, because it is an administrative duty. See *Richmond County Hosp. Auth. v. Dickerson*, 182 Ga. App. 601, 604 (356 SE2d 548) (1987), and *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234, 235 (367 SE2d 793) (1988), regarding administrative duties. Nor does the evidence preclude a finding that the failure to point out the discrepancy was a proximate contributing cause to the injuries which resulted when the phenol block procedure, which was not authorized by the consent form, was performed. As in *Ross*, supra, "the damage complained of here could have resulted from both administrative acts of hospital personnel and acts of medical skill and judgment of the surgeon."

The judgment of the trial court should be affirmed in both Case Nos. A94A1244 and A94A1245.

I am authorized to state that Chief Judge Pope and Judge Blackburn join in this dissent.

DECIDED NOVEMBER 30, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994 — 

*A. Russell Blank*, for appellant.
*Sullivan, Hall, Booth & Smith, Rush S. Smith, Jr., Melanie P. Simon*, for appellee.