S91A0809. SAVANNAH COLLEGE OF ART & DESIGN, INC. v. ROE et al.
(409 SE2d 848)

BENHAM, Justice.

Appellees were students living in appellant's dormitory when they were sexually assaulted by an intruder in January 1987. Appellees filed suit, alleging breach of contract and negligent failure to provide adequate security. The trial court denied the college's motion for summary judgment, and we granted certiorari from the Court of Appeals' denial of the college's application for interlocutory review.

1. Appellees maintain that a "housing policy agreement" between the college and each appellant constitutes a contract in which the college agreed to furnish a safe place to live, to provide sufficient security and protection, and to respond to requests for help. In the housing policy agreement, the student agreed to adhere to eight housing rules[1] and recognized that the rules were "intended to protect the security, privacy and comfort of dormitory students and neighbors."

> The first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality [cits.], and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. [Cits.] [*West v. Downer,* 218 Ga. 235 (5) (127 SE2d 359) (1962).]

---

[1] No firearms, illegal substances, pets, overnight guests, disruptive or rowdy activities were allowed. The student accepted financial responsibility for damage resulting from "inappropriate student behavior," and agreed to keep her room neat and clean. The student was informed that the dorm closed at 1:00 a.m., at which time visitors were to leave and guests could not enter. Residents could enter after contacting security personnel.

Inasmuch as the housing policy agreement does not express plainly and explicitly the college's willingness to undertake to protect the student dormitory residents from the criminal acts of third parties, and we are not willing to imply such an undertaking from the language of the housing policy agreement, the college was not contractually obligated to provide such protection. See *Donaldson v. Olympic Spa*, 175 Ga. App. 258 (333 SE2d 98) (1985). There being no contractual duty, there was no breach of that duty; therefore, the trial court erred in denying summary judgment to the college on the count of appellees' complaint asserting a breach of contract.

2. Appellees' negligence count is premised on the college's duty to exercise ordinary care in keeping the premises and approaches safe. OCGA § 51-3-1.

> "It is the duty of a proprietor to protect an invitee from injury caused by the misconduct of employees, customers, and third persons if there is any reasonable apprehension of danger from the conduct of said persons or if injury could be prevented by the proprietor through the exercise of ordinary care and diligence." [Cit.] Ordinarily, even where the proprietor's negligence is shown, he would be insulated from liability by the intervention of an illegal act which is the proximate cause of the injury. [Cit.] However, the above rule has been held inapplicable if the defendant (original wrongdoer) had reasonable grounds for apprehending that such criminal act would be committed. [Cits.] [*McClendon v. C & S Nat. Bank*, 155 Ga. App. 755, 756 (272 SE2d 592) (1980).]

That the college had knowledge that the dormitory subjected the students to the unreasonable risk of criminal attack is a prerequisite to recovery under OCGA § 51-3-1, and may be demonstrated by evidence of the occurrence of prior substantially similar incidents. *McCoy v. Gay*, 165 Ga. App. 590 (302 SE2d 130) (1983). Evidence that the college is located in an urban environment and that it had received reports of two instances of "peeping Toms" at the dormitory, of the removal from the dorm of a vagrant and an intoxicated person, of a student surprising a burglar, and of the occurrence of petty thefts is irrelevant because none of the incidents is substantially similar to the sexual assaults which are the bases of this litigation. *Nalle v. Quality Inn*, 183 Ga. App. 119 (358 SE2d 281) (1987); *Washington Rd. Properties v. Stark*, 178 Ga. App. 180 (342 SE2d 327) (1986); *McCoy v. Gay*, supra; *McClendon v. C & S Nat. Bank*, supra.[2] It is un-

---

[2] That the college was aware that the dormitory was located in an area of downtown Savannah where various crimes previously had been committed did not put the college on

disputed that the college had no knowledge of any criminal sexual assaults previously occurring at the college.

In light of the dearth of evidence of the occurrence of prior substantially similar incidents, the college was entitled to summary judgment because there was no evidence sufficient to create a factual issue as to whether the college knew or should have known that its dormitory residents were at risk of a violent criminal sexual attack. *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 70 (378 SE2d 323) (1989).

*Judgment reversed. All the Justices concur, except Smith, P. J., who dissents; Weltner, J., who dissents as to Division 2.*

DECIDED NOVEMBER 7, 1991 —
RECONSIDERATION DENIED DECEMBER 18, 1991.

*Neely & Player, Taylor Tapley Daly, Richard K. Hines V, Hugh M. Dorsey III,* for appellant.

*Forbes & Bowman, Morton G. Forbes, Middleton & Anderson, Susan S. Shaw, Hughes & Wieters, G. Richardson Wieters, John W. Minor, Jr.,* for appellees.

*William S. Stone, Frank J. Beltran, Craig T. Jones, James D. Hollingsworth, Gilbert H. Deitch, Gerald B. Kline, George R. Ference, James A. Nystrom,* amici curiae.

notice that its students were subject to a risk of violent sexual attack. In *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), the proprietor's knowledge that his business was located in a "high crime" area, when *coupled with* his knowledge of a previous substantially similar purse snatching in his parking lot four days earlier, was sufficient, albeit weak, evidence to give rise to an issue of fact as to whether the proprietor had a duty to exercise ordinary care to protect his patrons against the risk of criminal attack. In the case at bar, there is no prior substantially similar attack.