## A95A2199, A95A2200. WALKER v. STURBRIDGE PARTNERS, LTD. et al.; and vice versa.
### (470 SE2d 738)

PER CURIAM.

After plaintiff Kathy Ann Walker was raped at her apartment, she sued the apartment owners, defendant Sturbridge Partners, Ltd., the operating managers, defendant The Horn Blow Partnership, d/b/a The Horn Harlow Companies (collectively "Sturbridge") and the alleged rapist, a fellow tenant at her complex. Plaintiff alleged, inter alia, negligence and breach of contract because a rear kitchen window, through which the assailant gained entry, was not secured despite plaintiff's prior oral requests. The Sturbridge defendants denied the material allegations and jointly moved for partial summary judgment as to: 1) its alleged failure to act premised on the existence of prior crimes; 2) its alleged failure to act to correct loitering on its premises in the three days preceding the rape; and 3) its alleged breach of the lease.

Only the following chronology is undisputed: On May 2, 1992, plaintiff entered into a written lease agreement with Sturbridge Apartments. At approximately 12:30 a.m. on May 9, 1992, plaintiff was awakened by an intruder who raped and sodomized her. The assailant, allegedly defendant William Derace Brant, was a fellow resident who gained access to plaintiff's ground-floor apartment through the rear kitchen window.

In support of their motion for partial summary judgment, the Sturbridge defendants submitted documentary evidence that plaintiff had inspected the premises before she moved in and failed to note the alleged absence of a lock on the rear kitchen window. Chris Williams, the Sturbridge maintenance man, deposed that "the main locking mechanism on the rear kitchen window was functional and in proper working order prior to [plaintiff's] occupation of the apartment[; . . . that the] rear kitchen window was also equipped with thumb screw locks . . .[; and that it] was the policy of the apartment complex to put thumb screw locks on the windows in all ground floor apartments in addition to the main center locks. . . ." Gerald Gilbert, a Gwinnett County Deputy Sheriff who assisted in the investigation of plaintiff's rape, deposed that the rapist "gained entrance to [plaintiff's] apartment through the rear kitchen window[; . . . and that he and another officer] checked the window locking mechanism on the rear window and found it to be functioning properly."

In opposition, plaintiff showed that Paragraph 2 of the Rules and Regulations under defendant's lease agreement authorizes requests for maintenance to be "made by phone or in writing. . . ." Plaintiff, who had lived at that apartment for only a few days, explained she did not itemize any problems with the window locks on the move-in

inventory sheet because she "didn't check them . . ." when she first moved in. Consequently, she did not discover any immediate problem until she opened the window. She could not turn the latch and "couldn't lock . . ." the kitchen window after it had been opened. Plaintiff further testified that prior to the rape, she had twice orally instructed Sturbridge, through Lisa England, to "see that my lock on my window also needs to be fixed."

Steven Smith testified that the latch was not functioning properly and that he was unable to lock the window. He believed the problem was caused by the window having once been painted shut. Steven Smith also testified that he did not observe any thumbscrew locks on the window and had not removed any when opening the window. Mary Ann Wheat, a resident at the time of the attack on plaintiff, deposed that, "prior to May 9, 1992, [she] had complained several times to Lisa England about the kitchen window latch which was broken in [her own] apartment."

The Sturbridge motion for partial summary judgment further argued that there was no liability for plaintiff's injuries since there had been no substantially similar occurrences on the property. Specifically, Sturbridge argued that from October 23, 1990, when Sturbridge began owning and managing the premises, until May 9, 1992, there had never been a rape or sexual assault committed on the premises. Therefore, because the independent, intervening, criminal act of defendant Brant was unforeseeable, there was no breach of any duty to protect plaintiff Walker.

In opposing the motion, plaintiff presented two types of circumstances purporting to evince recent criminal activity in the apartment complex. First, she showed that three prior burglaries occurred in March and April 1992. These were daytime burglaries, all of which happened when no one was home. Second, she submitted evidence of a purported sexual assault, involving another female tenant. Mary Ann Wheat deposed that she had complained to Lisa England several times about three men, including defendant William Derace Brant, who would congregate around the "[d]umpster closest to [her] apartment . . . and [make] obscene gestures and obscene remarks . . ." to her. She specifically deposed that late at night on May 6, 7 and 8, 1992, these men accosted her in the parking lot near her apartment and that she became frightened for her personal safety. Although this tenant testified that she complained to Sturbridge management and its security officer, there is no evidence of record that she ever filed a police incident report. Plaintiff Walker also presented the affidavit of Darrell Tidwell, a certified crime prevention practitioner, who offered 15 reasons why Sturbridge was negligent in failing to take steps and measures reasonably calculated to prevent rape and sexual assault.

The trial court granted the Sturbridge defendants' motion for partial summary judgment in part, as to "Count I, for the . . . alleged negligence in failing to act despite . . . notice regarding prior crimes . . .; Count I, for . . . alleged negligence in failing to act regarding the three men . . . loitering on the premises . . .; [and] Count II, the . . . alleged breach of . . . certain lease provisions." The trial court denied summary judgment as to any negligence "in allegedly failing to repair the kitchen window . . . [and whether plaintiff] is entitled to punitive damages regarding Defendants' alleged negligence in failing to repair." In Case No. A95A2199, plaintiff Walker appeals from the partial grant of summary judgment in both tort and contract. In Case No. A95A2200, the Sturbridge defendants cross-appeal from the denial of their motion for summary judgment as to tort liability for failing to fix the window and any liability for punitive damages. *Held*:

## Case No. A95A2199

1. In her second enumeration of error, plaintiff Walker contends the trial court erred in its determination that, as a matter of law, the prior burglaries were not sufficiently similar to provide notice of a problem to Sturbridge. We agree that evidence of three daytime apartment burglaries in March and April 1992, all of which happened when no one was home, were of sufficient similarity as to have put Sturbridge on notice.

" '[I]n order to prove that the owner had advance notice of the danger of such an assault, evidence is admissible to show a pattern of prior substantially similar criminal assaults on the premises creating a known dangerous condition for which the owner may be held liable.' *Reid v. Augusta-Richmond County Coliseum Auth.*, 203 Ga. App. 235, 237 (1) (416 SE2d 776) (1992); *Grandma's Biscuits v. Baisden*, 192 Ga. App. 816, 817 (1) (386 SE2d 415) (1989)." *Woods v. Kim*, 207 Ga. App. 910 (429 SE2d 262) (1993). "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." OCGA § 16-7-1 (a). In our view, the three prior daytime burglaries were sufficiently similar to put the landlord on notice that its tenants may be subjected to an unreasonable risk of harm from the criminal acts of third persons. "In this sense, substantially similar *does not mean identical*, and it is not a question whether a [sexual assault resulted from any previous burglary], but whether the prior crimes should have put an ordinarily prudent person on notice that the [landlord's tenants] were facing increased risks. 'All that is required is that the prior (incident) be suffi-

cient to attract the [landlord's] attention to the dangerous condition which resulted in the litigated (incident).' *Pembrook Mgmt. v. Cosaboon,* 157 Ga. App. 675, 677 (278 SE2d 100)." (Emphasis supplied.) *Matt v. Days Inns of America,* 212 Ga. App. 792, 794 (443 SE2d 290), aff'd sub nom., *Days Inns of America v. Matt,* 265 Ga. 235 (454 SE2d 507). In *Days Inns,* the Supreme Court of Georgia concluded that a single "prior robbery committed by force create[d] a triable issue as to whether [the occupier of land] had a duty [under OCGA § 51-3-1] to exercise ordinary care to guard its patrons against the risks posed by similar criminal activity[, citing *Lau's Corp. v. Haskins,* 261 Ga. 491, 493 (1) (405 SE2d 474)]." 265 Ga. 235, 236, supra. Consequently, in the case sub judice, we do not recognize any attempted distinction of the three prior burglaries as crimes against property but not brutal sexual assaults. This analysis suggests that the landlord could lawfully safeguard its tenants from burglars who commit only thefts differently from those burglars who commit crimes against the person. Such reasoning was previously considered by the whole court and rejected. *Matt v. Days Inns of America,* 212 Ga. App. 792, 795, supra. Compare *Savannah College of Art &c. v. Roe,* 261 Ga. 764, 765 (2) (409 SE2d 848), where evidence that the college "had received reports of two instances of 'peeping toms' at a dormitory, [as well as] the removal from the dorm of a vagrant and an intoxicated person, of a student surprising a burglar, and of the occurrence of petty thefts [was] irrelevant because none of [those] incidents [was] substantially similar to the sexual assaults . . ." in that case. Since plaintiff's evidence in the case sub judice is more than sufficient to create a triable issue as to defendants' appreciation of the foreseeable risks posed by burglars to its tenants, we reverse in part the grant of partial summary judgment as to the defendant landlord and its agents sounding in tort.

2. Evidence of cat-calling and other boorish behavior by tenants and others gathered on the premises is not good evidence to put the landlord on notice of criminal activity creating an unreasonable risk of harm to tenants. "[W]ithout foreseeability that a criminal act will occur, no duty on the part of the proprietor to exercise ordinary care to prevent that act arises." *Days Inns of America v. Matt,* 265 Ga. 235, 236, supra. Summary judgment was correctly granted in part as to any alleged breach of a duty care owed to plaintiff with respect to these circumstances. Nor does such evidence demonstrate any breach of defendants' duties under the lease. Consequently, we further affirm in part the partial grant of summary judgment as to any contention that defendants breached the lease agreement. *Savannah College of Art &c. v. Roe,* 261 Ga. 764 (1), supra.

*Case No. A95A2200*

3. In their cross-appeal, the Sturbridge defendants contend they were entitled to summary judgment on the issue of the failure to repair the lock because the lock functioned as designed and used.

OCGA § 44-7-14 provides, "[T]he landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair." " '(T)he purpose for having secure locks on the [windows and] door to the plaintiff['s] apartment was to prevent unauthorized entry thereto and the accompanying wrongful criminal acts.' *Warner* [*v. Arnold*, 133 Ga. App. 174, 179 (210 SE2d 350)]." *Demarest v. Moore*, 201 Ga. App. 90, 92 (2) (410 SE2d 191) (1991). It is uncontroverted that the rapist in the case sub judice entered via the ground level kitchen window. Generally, an independent, intervening criminal act by a third party breaks the chain of causation unless the intervening act is a reasonably foreseeable consequence of a defendant's negligent act. *Demarest v. Moore*, 201 Ga. App. 90, 92 (2), supra.

In this case, the evidence whether plaintiff Walker provided notice to the Sturbridge defendants that her window lock needed repair, and whether the kitchen window lock was functioning properly prior to the perpetrator's entry was conflicting. Construing that conflicting evidence in the light most favorable to plaintiff Walker, we conclude that triable issues of material fact remain for jury resolution as to whether defendants received adequate notice of the faulty window lock. Consequently, summary judgment was properly denied to the Sturbridge defendants as to this theory of liability. Summary judgment is appropriate only in plain and indisputable cases, and this is not such a case. See *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 295 (322 SE2d 737) (1984) (questions of negligence, contributory negligence, proximate cause, and the exercise of ordinary care are normally reserved for jury determination); and *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (1) (392 SE2d 535) (1990) (summary judgment rulings based on undisputed facts, not weighing of evidence or witness credibility).

4. The Sturbridge defendants nevertheless contend they were entitled to summary judgment on Walker's claim for punitive damages. In the opinion of the court, this contention has merit.

" 'Under OCGA § 51-12-5.1 (b), which is applicable in the instant case, it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. There is general agreement that, because it lacks this element, mere negligence is not enough.' (Citations and punctuation omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811)." *Roseberry v. Brooks*, 218 Ga. App.

202, 209 (4) (461 SE2d 262).

Having reviewed the record and transcript, we do not find sufficient evidence that the Sturbridge defendants showed the requisite degree of wilful misconduct, malice, wantonness, oppression or otherwise evinced that entire want of care as to authorize the imposition of punitive damages under OCGA § 51-12-5.1 (b). Accordingly, we reverse the trial court's denial of summary judgment on this issue.

*Judgment affirmed in part and reversed in part in Case No. A95A2199. McMurray, P. J., Pope, P. J., and Johnson, J., concur. Beasley, C. J., Blackburn, Smith and Ruffin, JJ., concur in the judgment only. Birdsong, P. J., and Andrews, J., concur in part and dissent in part. Judgment affirmed in part and reversed in part in the cross-appeal, Case No. A95A2200. Beasley, C. J., Birdsong, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., and Pope, P. J., concur in part and dissent in part.*

McMurray, Presiding Judge, concurring in part and dissenting in part.

I fully concur in Case No. A95A2199 and all that is said therein, and the partial reversal of summary judgment because the three prior daytime burglaries were sufficiently similar for purposes of putting the landlord on notice. In Case No. A95A2200, I fully concur with Division 3 and all that is said therein, that the conflicting evidence requires jury resolution as to the landlord's culpability, if any, for the alleged failure to act on plaintiff's oral notices regarding the kitchen window through which plaintiff's assailant gained unlawful entry. But I further conclude from that same evidence that the jury would be authorized to award punitive damages and so I respectfully dissent from Division 4.

" 'Under OCGA § 51-12-5.1 (b), which is applicable in the instant case, it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. There is.general agreement that, because it lacks this element, mere negligence is not enough.' (Citations and punctuation omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811)." *Roseberry v. Brooks*, 218 Ga. App. 202, 209 (4) (461 SE2d 262). In the case sub judice, both plaintiff and Mary Ann Wheat testified that defendants failed to repair broken latches on kitchen windows, after the tenants had complained. Specifically, that evidence shows that the landlord failed to heed plaintiff's first and second complaints. " '(T)he purpose for having secure locks on the [windows and] door to the plaintiff's [ground-floor] apartment was to prevent [exactly this type of] unauthorized entry thereto and the accompanying wrongful criminal acts.' *Warner [v. Arnold,* 133 Ga. App. 174, 179 (210 SE2d 350)]." *Demarest*

*v. Moore*, 201 Ga. App. 90, 92 (2) (410 SE2d 191). In my view, the trial court correctly perceived that the landlord's dilatory response to plaintiff's request to secure the ground-floor window, a matter directly affecting the safety of the premises, is sufficiently outrageous to create a jury question as to whether defendants exhibited that entire want of care as would authorize punitive damages. As my colleagues in the majority would nevertheless reverse that correct determination, I respectfully dissent from Division 4 in the cross-appeal, Case No. A95A2200.

I am authorized to state that Presiding Judge Pope joins in this opinion.

ANDREWS, Judge, concurring in part and dissenting in part.

In Case No. A95A2199, I respectfully dissent from Division 1 because Walker's evidence of criminal activity or prior substantially similar crime is insufficient to place Sturbridge on notice of an alleged crime problem. Compare *Matt v. Days Inns of America*, 212 Ga. App. 792 (443 SE2d 290) (1994) (internal security audit detailing deficiencies, substantial amount of crime in the adjacent area and two robberies by force in the same parking lot where Matt was robbed provided notice to Days Inn). In *Days Inns of America v. Matt*, 265 Ga. 235 (454 SE2d 507) (1995), the Supreme Court determined that a prior robbery by force which occurred without a weapon in the same parking lot was substantially similar to the armed robbery at issue, so as to create a triable issue. *Matt*, 265 Ga. at 236. Thus, the court retained the "substantially similar" analysis implicit in *Savannah College of Art &c. v. Roe*, 261 Ga. 764, 765 (2) (409 SE2d 848) (1991).

In this case, the majority's reasoning effectively overrules *Savannah College*, supra, where the Supreme Court determined that petty thefts inside the dormitory and an interrupted burglary were not substantially similar to the sexual assaults at issue. By glossing over the key factual distinctions between Walker's situation and these two Supreme Court cases, the majority has opted to create new law out of whole cloth. In *Days Inns v. Matt*, the Supreme Court made clear that a proprietor's superior knowledge was crucial to foreseeability.

In this case, Walker has not offered any evidence that Sturbridge knew about the alleged burglaries. I cannot accept Walker's leap in logic that a few daytime burglaries occurring in the prior 18 months, all of which happened when the tenant was not at home, placed Sturbridge on notice of a crime problem. Stealing a credit card in the daytime, when its owner is away, is hardly analogous to entering at night when the tenant is home and raping her. Nor can I agree with the majority's flawed analysis that the commission of one daytime burglary is sufficient to make the rape of Walker reasonably foresee-

able and to create a triable issue as to whether Sturbridge had a duty under OCGA § 51-3-1 to exercise ordinary care to guard its tenants against the risks of similar criminal activity. See *Savannah College*, 261 Ga. at 765 (2).

In my view, Walker failed to satisfy her evidentiary burden of showing that Sturbridge had knowledge of an unreasonable risk to her safety because she offered: 1) no evidence of any nighttime crimes of any kind whatsoever, and 2) no evidence of a prior documented sexual assault or similar crime occurring inside any apartment or anywhere else on Sturbridge's premises.

By holding the landlord liable on Walker's sparse evidence of any prior criminal activity, the majority makes property owners and property management companies the insurers of their tenants' safety. I cannot conceive of what steps Sturbridge could reasonably have undertaken to protect Walker inside her own apartment from her intoxicated neighbor who had been locked out by his wife following a domestic dispute.[1]

I am authorized to state that Presiding Judge Birdsong joins in this opinion.

DECIDED MARCH 15, 1996 —
RECONSIDERATIONS DENIED MARCH 29, 1996 — 

*Simmons, Warren, Szczecko & McFee, Joseph Szczecko*, for appellant.

*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier*, for appellees.

*Dennis, Curry, Porter & Gray, R. Clay Porter, Goldner, Sommers, Scrudder & Bass, Henry E. Scrudder, Jr., Christopher D. Pixley*, amici curiae.

---

[1] After the neighbor raped Walker, police discovered that he had 16 prior arrests in Florida, including burglary, battery, trespassing, prowling, and shoplifting. He subsequently became the prime suspect for at least one of the Sturbridge apartment burglaries.