S96G1117. STURBRIDGE PARTNERS, LTD. et al. v. WALKER.
(482 SE2d 339)

HINES, Justice.

Certiorari was granted to review the Court of Appeals opinion in *Walker v. Sturbridge Partners, Ltd.*, 221 Ga. App. 36 (470 SE2d 738) (1996). The issue to be resolved is the showing that must be made by a plaintiff seeking to establish the foreseeability of a criminal attack for the purpose of premises liability.

Walker was raped and sodomized in her apartment at approximately 12:30 a.m. on May 9, 1992. She sought recovery for her injuries against the apartment owner, Sturbridge Partners, Ltd., and the operating manager, The Horn Blow Partnership, d/b/a The Horn Harlow Companies (collectively "Sturbridge") based, inter alia, on their alleged negligence in failing to take action despite notice of three prior burglaries which occurred in March and April 1992. Sturbridge moved for summary judgment on the issue, asserting that because the evidence failed to disclose any prior rapes or other violent sex crimes, the criminal attack was not foreseeable, as a matter of law, and it therefore had no duty to act. The trial court granted Sturbridge's motion, and the Court of Appeals reversed, holding that, for the purpose of determining foreseeability, a distinction as a matter of law between the risks posed by burglaries involving brutal sexual assaults and those that did not was unfounded. It stated that such an

> analysis suggests that the landlord could lawfully safeguard its tenants from burglars who commit only thefts differently from those burglars who commit crimes against the person. . . . [P]laintiff's evidence . . . is more than sufficient to create a triable issue as to defendants' appreciation of the foreseeable risks posed by burglars to its tenants.

*Walker v. Sturbridge Partners, Ltd.*, supra at 39 (1). Sturbridge appeals from the holding, and we affirm.

The general rule regarding premises liability is that a landlord does not insure tenants' safety against third-party criminal attacks, and that any liability from such attacks must be predicated on a breach of duty to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. A landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks

extends *only* to *foreseeable* criminal acts. See *Days Inns of America v. Matt*, 265 Ga. 235, 236 (454 SE2d 507) (1995). The difficulty arises in determining which criminal acts are foreseeable.

Sturbridge relies upon *Savannah College of Art & Design v. Roe*, 261 Ga. 764 (409 SE2d 848) (1991), for the proposition that a landlord's knowledge of prior criminal acts against property cannot establish the foreseeability of a brutal sex crime as a matter of law, and, therefore, no duty arose in the instant case. Such a restrictive and inflexible approach does not square with common sense or tort law, and represents a significant departure from precedent of this Court. See *Days Inns of America v. Matt*, supra; *Lau's Corp. v. Haskins,* 261 Ga. 491, 492 (1) (405 SE2d 474) (1991); and *Atlantic Coast Line R. Co. v. Godard*, 211 Ga. 373, 376 (1) (86 SE2d 311) (1955). To the extent that *Savannah College of Art & Design* supports such an analysis for determining foreseeability, it is overruled.

In *Lau's Corp. v. Haskins,* supra at 492 (1), this Court adopted a guideline for determining whether a proprietor had a "duty" to exercise ordinary care in protecting his or her customers against the risk posed by criminal activity. We held: "[i]f the proprietor has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.' [Cit.]" Id. Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity. See *Matt v. Days Inns of America*, 212 Ga. App. 792 (443 SE2d 290) (1994), aff'd, *Days Inns of America v. Matt*, supra.

In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. See *Days Inns of America v. Matt*, supra; *Lau's Corp. v. Haskins*, supra; *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171 (460 SE2d 809) (1995); and *Henderson v. Kroger Co.*, 217 Ga. App. 252 (456 SE2d 752) (1995). While the prior criminal activity must be substantially similar to the particular crime in question, that "does not mean identical . . . . '[What] is required is that the prior [incident] be sufficient to attract the [landlord's] attention to the dangerous condition which resulted in the litigated [incident].' [Cit.]" *Matt v. Days Inns of America*, supra at 794-795. Further, the question "of reasonable foreseeability" of a criminal attack is generally "for a jury's determination rather than summary adjudication by the courts." *Lay v. Munford*, 235 Ga. 340, 341 (219 SE2d 416) (1975).

Sturbridge contends that because of the nature of the prior burglaries, that is, they occurred during the daytime when no one was home and did not involve forced entry, it was unreasonable to anticipate that a brutal sex crime would occur. We do not agree. The issue is not the foreseeability of the rape itself, but whether Sturbridge had actual knowledge of the prior burglaries and, because of that knowledge, should have reasonably anticipated the risk of personal harm to a tenant which might occur in the burglary of an occupied apartment. See *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995); *Days Inns of America v. Matt*, supra; and *Lau's Corp. v. Haskins*, supra.

The record demonstrated that Sturbridge had actual knowledge of two of the three prior burglaries. Although they were committed when the apartments were vacant, it was reasonable to anticipate that an unauthorized entry might occur while an apartment was occupied and personal harm to a tenant could result.[1] Thus, we agree with the Court of Appeals that evidence of the prior burglaries was sufficient to give rise to a triable issue as to whether or not Sturbridge had the duty to exercise ordinary care to safeguard its tenants against the foreseeable risks posed by the prior burglaries.[2]

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Carley, J., who dissent.*

BENHAM, Chief Justice, dissenting.

Because the majority opinion makes landowners virtual insurers of those who come on their property, I must dissent. A property owner's liability for injuries caused by the criminal acts of third parties is supposed to be an exception to the rule (*McClendon v. C & S Nat. Bank*, 155 Ga. App. 755, 756 (272 SE2d 592) (1980)), but the majority makes the exception devour the rule.

My first disagreement with the majority is with the result. The issue is whether Sturbridge's knowledge of two previous burglaries in vacant apartments in the complex gave it reason to anticipate that someone would break into an occupied apartment in order to sexually assault the occupant. In *Savannah College of Art & Design v. Roe*, 261 Ga. 764 (2) (409 SE2d 848) (1991) (hereinafter *SCAD*), where there had been a previous incident in which a resident surprised a burglar, this Court held that "the college was entitled to summary judgment because there was no evidence sufficient to create a factual issue as to whether the college knew or should have known that its

---

[1] As provided in OCGA § 16-7-1 (a), the very nature of burglary suggests that personal injury may occur during the unauthorized entry into the dwelling house of another.

[2] Because neither the trial court nor the Court of Appeals reached the question of whether Sturbridge failed to exercise ordinary care, we do not consider the issue.

dormitory residents were at risk of a violent criminal sexual attack. [Cit.]" Id. at 766. That decision is directly on point and controlling in this case. It demands the conclusion that the crimes of which the property owner here was on notice were not so similar as to impose on that property owner a duty to guard against the crime which was committed. The Court of Appeals erred in ruling otherwise and erred in seeking to cast aside this Court's ruling in *SCAD* with no more than a "compare" citation.

The majority's overruling of *SCAD* is an unfortunate jettisoning of precedent.[3] That case has been applied with predictability since it was decided, and abandoning the past several years of precedent is unwise. The cases cited by the majority are not, as it contends, inconsistent with *SCAD*. The departure from precedent is not in that case, as the majority contends, but in this case, in broadening the concept of notice so far as to make it unnecessary. If, as the majority holds, any burglary of any type at any time is sufficient to make a violent sexual attack in the home of the victim foreseeable, then *SCAD* was wrongly decided. I do not believe it was wrongly decided, and I believe the majority is wrong in overruling it.

The majority errs again, I believe, in its analysis of the issue of substantial similarity. Although it gives lip service to the factors to be considered in an analysis of foreseeability in premises liability cases, noting the necessity of considering "the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question," the majority opinion goes on to hold, in effect, that notice of any burglary on the premises of any apartment complex, no matter how dissimilar in terms of the nature of the crime, the violence involved, and the circumstances of the crime, is sufficient to put the owner on notice of the risk of someone breaking into an occupied apartment for the purpose of committing a violent sexual assault. Without any specific authority and without explanation of the rationale, the majority opinion seeks to establish as a matter of law that a burglary committed "when the apartments were vacant" makes it reasonable to anticipate entry into an occupied apartment and personal harm to the occupant. The only authority offered in support of that sweeping rule of law is a reference, in a footnote, to the definition of burglary in OCGA § 16-7-1 (a), and an assertion in that footnote that the statute provides that "the very nature of burglary suggests that personal injury may occur during the unauthorized entry into the dwelling house of another." The language of that statute does not support that proposition. There

---

[3] It should be noted that *McClendon*, supra, is also effectively overruled by the majority's holding.

is no direct reference in the statute, or even the "suggestion" found by the majority, that personal injury is likely to occur. In fact, such a notion is belied by the legislative expansion of the definition of burglary beyond the common law focus on dwelling houses to any structure, including railroad cars and boats, "designed for use as the dwelling of another . . . ." Id.

The likely effect of the majority's analysis of this issue can be ascertained by applying it to several recently decided cases in which proprietors were found not to be liable. The Court of Appeals held in *Scott v. Housing Auth. of Glennville*, 223 Ga. App. 216 (477 SE2d 325) (1996), that a shooting incident arising from a domestic dispute was not substantially similar to a shooting incident involving drug transactions. Applying the majority's analysis, though, would require the opposite conclusion: a shooting for any reason on the premises makes it reasonable to anticipate that a bystander will be shot. Relying on *SCAD*, the Court of Appeals held in *Doe v. Prudential-Bache/A.G. Spanos Realty Partners*, 222 Ga. App. 169 (1) (a) (474 SE2d 31) (1996), that evidence of thefts and vandalism in an apartment building parking garage did not put the building's owner on notice that its residents were subject to violent sexual attack. However, if burglaries of vacant apartments put an apartment complex owner on notice of the likelihood of violent sexual attack in the apartment complex, then the possibility of a resident of the apartment building happening upon a vandal or thief should make it reasonable to anticipate harm to a resident and consequent liability to the building owner. The plaintiff in *Henderson v. Kroger Co.*, 217 Ga. App. 252, 253 (456 SE2d 752) (1995), was injured when a fleeing shoplifter collided with her in the doorway. Although 47 previous incidents of shoplifting did not, according to the Court of Appeals, make it foreseeable that one of them would collide with a customer and cause injury, that result would be otherwise applying the rule of the majority in this case: a crime against property makes it reasonable to anticipate that harm to a person might eventuate. In the case of *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300 (1) (454 SE2d 183) (1995), the rape and robbery of a guest in her room was held not to be foreseeable because there had been no incidents substantially similar to the sexual assault of the victim. There had, however, been incidents of theft on the premises of the hotel. If burglaries of empty apartments in an apartment complex make it reasonable to anticipate entry of an occupied apartment and harm to the occupant, then surely thefts in a hotel make it reasonable to anticipate entry of an occupied room and harm to the occupant. The Court of Appeals found insufficient similarity between two prior purse snatchings on the defendant's premises in *J. C. Penney Co. v. Spivey*, 215 Ga. App. 680 (1) (452 SE2d 191) (1994), but under the analysis of the majority, surely one purse

snatching makes it reasonable to anticipate that the next purse snatcher might cause harm to a resistant victim. Finally, a purse snatching on the premises of a store, though a species of robbery, was held in *Woods v. Kim*, 207 Ga. App. 910, 911 (429 SE2d 262) (1993), not substantially similar to an armed robbery and shooting, but the majority's analysis would require us to hold that the crimes were sufficiently similar because it is as reasonable to anticipate from that occurrence that a victim might resist a robbery and be shot, as it is to anticipate from a burglary in an unoccupied dwelling that an occupied apartment might be entered for the purpose of a violent sexual assault.

I believe that the majority's analysis is faulty and unauthorized. The Court of Appeals was going in the right direction in *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148 (1) (a) (464 SE2d 220) (1995), when it held that "the key to sufficient similarity [is] . . . in the nature of the offense: was the prior incident also an offense against a person, or was it an offense against property or public morals?" However, the Court of Appeals, too, offered an incomplete solution to so complex a problem when it excluded from its analytical key "the details of the crime [and] the degree of force used . . . ." Id. The nature of the offense, i.e., whether it is directed against a person or merely against property or public morals, is only one factor to consider. Two other factors to include in the analysis are the degree of force or violence involved, which requires no explanation here, and another, less easily defined factor, the circumstances of the crime. By that, I mean those circumstances which have some defining effect on the crime. For instance, a daytime burglary of an unoccupied residence is significantly different, the majority's opinion notwithstanding, from a nighttime burglary of an occupied residence. The risk to persons inherent in the second instance is significantly greater than in the first instance and should be taken into account, especially since, as we noted in *Lau's Corp. v. Haskins*, 261 Ga. 491 (2) (405 SE2d 474) (1991), "to be negligent, the conduct must be unreasonable in light of the recognizable risk of harm. [Cit.]" Applying those three factors to the present case, we would see that the previous burglaries were against property only, involved no violence, and occurred under circumstances significantly different than those in this case. Accordingly, I would hold that the trial court was correct in holding that notice of the previous burglaries in this case was not enough from which to conclude that the defendant "had reasonable grounds for apprehending that such criminal act would be committed." *SCAD* at 765. That being so, I would hold that the Court of Appeals erred in reversing the grant of summary judgment to the owner of the apartments.

Because the majority of this Court has reached the opposite con-

clusion, and has done so by abandoning precedent and employing a process which I believe is contrary to current law, a process which, other than making most proprietors insurers, lacks predictability, I must dissent.

I am authorized to state that Presiding Justice Fletcher and Justice Carley join this dissent.

DECIDED MARCH 17, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997.

*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier,* for appellants.

*Simmons, Warren, Szczecko & McFee, Joseph Szczecko,* for appellee.

*Bauer & Deitch, Gilbert H. Deitch, Forbes & Bowman, John A. Foster,* amici curiae.