**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 2, 2019**

# In the Court of Appeals of Georgia

A19A0723. RAUTENBERG v. POPE et al.                    DO-026

DOYLE, Presiding Judge.

This appeal arises from a personal injury case filed by Steve Rautenberg against Robert L. Pope, Pope Properties & Investments, L. P., and Global Parts, Inc., (collectively "Global Parts") after Rautenberg was injured on the premises of a Global Parts parking lot that leased tractor trailer spaces to his employer. The trial court granted Global Parts's motion for summary judgment, and Rautenberg appeals, arguing that (1) the trial court inappropriately applied *Prophecy Corp. v. Rossignol, Inc.*[1]; (2) the trial court ignored evidence that the defendants were aware of prior crimes in the parking lot; (3) the trial court erred by weighing evidence and making factual determinations in derogation of the standard on summary judgment; and (4)

---

[1] 256 Ga. 27 (343 SE2d 680) (1986).

the trial court erred by finding as a matter of law that the attack on Rautenberg was not foreseeable. For the reasons that follow, we reverse.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[2]

Viewed in this light, the record shows that on June 20, 2012, Rautenberg, a truck driver, parked his truck in a rented space at 2952 Moreland Avenue after dropping off a trailer and in anticipation of meeting another driver bringing a second trailer for Rautenberg to haul. 2952 Moreland was a property including a parts shop and a fenced lot with lighting, controlled gate access, and security cameras around a building on the property, some of which captured portions of the parking lot ; Global Parts leased spaces in the fenced lot to trucking companies for their employees to use as secure areas for their drivers to park or leave trailers.

On the day in question, between 5:00 p.m. and 6:00 p.m., Rautenberg parked at the Global Parts lot without anyone parked beside him and retired to the sleeping

---

[2] (Punctuation omitted.) *Agnes Scott College, Inc. v. Clark*, 273 Ga. App. 619, 620 (616 SE2d 468) (2005).

2

cab of his truck, where he had the television and air conditioner on, to await his co-worker. Rautenberg was startled awake by sounds on the driver-side window of his truck and saw an individual at the window with a tool — a long pry bar or screwdriver — but having just awoken, Rautenberg did not realize that the person was not his co-worker. Upon seeing Rautenberg, the man left, and Rautenberg, who was not wearing shoes, exited through the driver's side and found another tractor trailer cab parked extremely close to his cab. Thus, when he stepped out, Rautenberg was forced to exit onto the step of the neighboring truck, in which he saw the man he had viewed through his window. At this point, the man quickly drove the cab away with Rautenberg hanging on the side mirror, sideswiping a trailer on his way to the exit; Rautenberg fell off, and the cab ran over him, backed over him, and ran back over him again, leaving Rautenberg with numerous injuries.

Rautenberg contended that his trucking company started using the Global Parts lot because it had better security than the lot his employer previously used. He deposed that in his experience, the gate was closed after hours, and when hanging onto the rogue cab, he was hoping the gate would be closed and the truck would stop so he could get off. Although Rautenberg deposed that the incident happened in the

early evening around rush hour, the police report noted that the officer first made contact with Rautenberg in the lot at 8:36 p.m.

Global Parts's employee Jill McLeer deposed that while she was managing the parking lot, she would get police reports if incidents occurred, whether criminal or accidental, and the company did its best to get the surveillance video if it was available. She deposed that there could have been as many as 20 prior thefts in the lot. McLeer deposed that she had received complaints that the gate was not working just before the incident and that they had various problems with it not working; she confirmed that there was gas stolen from a truck within the few months prior to the incident. McLeer deposed that prior to 2012, there were multiple thefts, including hundreds of thousands of dollars of furniture stolen from multiple trailers belonging to one company. She deposed that normally Global Parts's employees were on the premises until they closed at 5:00 p.m., and "typically the back lot . . . [was] secured by" then.

Charles Stille, Global Parts's 30 (b) (6) witness, deposed that there were some burglaries on the property. And prior to the incident involving Rautenberg, Global Parts had received complaints about security, including gas siphoning and burglaries,

Stille "had no idea" how many such complaints he had received but at least one was a stolen vehicle.

In its summary judgment order, the trial court, relying on *Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L. P.*[3] and *Baker v. Simon Property Group*,[4] granted summary judgment "[b]ecause the [c]ourt finds a lack of prior substantially similar crimes," thereby establishing lack of foreseeability on the part of Global Parts that would require it to keep Rautenberg safe from this third-party criminal act.

1. Rautenberg argues that the trial court erred by granting the defendants' motion for summary judgment. We agree.

> Although a landowner has a duty to invitees to exercise ordinary care to keep its premises safe, the landowner is not an insurer of an invitee's safety. An intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable. In order for the crime at issue to be foreseeable, it must be substantially similar to previous criminal activities occurring on or near the premises such that a reasonable person would take ordinary precautions to protect invitees from the risk posed by the criminal activity. In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby

---

[3] 268 Ga. 604 (492 SE2d 865) (1997).

[4] 273 Ga. App. 406 (614 SE2d 793) (2005).

establishing the foreseeability of risk, the court must inquire into the location, nature[,] and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the landowner's attention to the dangerous condition which resulted in the litigated incident.[5]

Here, despite the trial court's findings otherwise, Rautenberg presented sufficient evidence which precluded summary judgment based on an intervening criminal act. First, Global Parts's representive admitted to knowledge of "burglaries," thefts, and other property crimes on the premises, and many of those break-ins had been perpetrated on the trucks parked in the rented spaces.[6] It is clear from the email

---

[5] (Citations and punctuation omitted.) *Clark*, 273 Ga. App. at 621-622 (1).

[6] See *Camelot Club Condo. Assn. v. Afari-Opoku*, 340 Ga. App. 618, 621-622 (1) (A) (i) (798 SE2d 241) (2017) (holding that a question of fact existed as to whether property owners were responsible for decedent's murder by men who followed him home because evidence established that numerous prior robberies occurred in the parking lot); *Double View Ventures, LLC v. Polite*, 326 Ga. App. 555, 559-560 (1) (a) (757 SE2d 172) (2014) (question of fact existed based on evidence of numerous armed robberies and assaults on property prior to aggravated assault of plaintiff); *Bethany Group, LLC v. Grobman*, 315 Ga. App. 298, 301 (1) (a) (727 SE2d 147) (2012) (holding that summary judgment on premises liability claim arising out of subsequent murder was inappropriate because there was evidence of prior robberies and violence on the property).

exchanges between Global Parts and Rautenberg's employer that lessees expected the parking lot to be secure; indeed, the hope that it was secure was one of the stated reasons that Rautenberg's employer left its old lot and moved to Global Parts. Moreover, the personal injuries Rautenberg sustained in this incident were directly related to the commission of the property crime of breaking into a tractor trailer (the type of crime of which Global Parts was on notice and expected to guard against) and the suspect's ensuing flight from the area as opposed to, for example, a sudden intentional assault performed in an area known for minor theft.[7] Sufficient facts were presented such that a jury could find that Rautenberg was surprised by the sudden movement of the truck and did not intend to be carried away by the assailant. The fact that his injuries were different than those one would normally expect from a truck break-in is not a fact that demands summary judgment in this instance.[8] Finally,

---

[7] Compare with *Medical Center Hosp. Auth. v. Cavender*, 331 Ga. App. 469, 475-476 (1) (a) (771 SE2d 153) (2015) (physical precedent only as to footnote nine) (holding that prior criminal incidents did not make foreseeable a shooter's entry into a hospital after the death of his mother); *Clark*, 273 Ga. App. at 622 (1) (holding that prior break-ins did not cause to be foreseeable the carjacking and rape of a parking lot user); *Baker*, 273 Ga. App. at 407 (1) (car jacking and shooting were not foreseeable based on previous break-ins perpetrated on unoccupied vehicles).

[8] See *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997) (holding that "[w]hile the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical"; rather, such activity

7

regardless of the exact time of the incident, all of the testimony shows that it occurred after the time at which McLeer deposed the lot should have been secured for the evening.[9]

Rautenberg presented sufficient evidence, largely based on the admissions of Global Parts, that the owners were aware that their customers had encountered property crimes on the property before and that they were expected to guard against such crimes. Accordingly, the trial court erred by granting summary judgment based on the lack of foreseeability of a third-party crime.

2. To the extent that the trial court intended to apply the rule announced in *Prophecy Corp.*,[10] the inconsistencies noted by the court — whether a pry bar or screwdriver was used or the time at which the incident occurred — were minor or were not actually inconsistencies but instead were the witness's admission that he was

---

"[must] be sufficient to attract the [owner's] attention to the dangerous condition which resulted in the litigated incident") (punctuation omitted).

[9] "[W]e recognize that questions of foreseeability are generally for a jury to decide. . . ." *Doe*, 268 Ga. at 606. See also *Walker*, 267 Ga. at 786-787.

[10] 256 Ga. at 30 (1) (explaining the rule that "the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is 'contradictory, vague or equivocal'").

unsure of precisely what occurred at certain points. Thus, *Prophecy Corp.* was not applicable to this case.

3. The trial court's grant of summary judgment was based solely on foreseeability of the third-party crime.[11] The only issues of factual causation reviewed by the trial court[12] were that (1) "no crime was committed against" Rautenberg, and (2) "Rautenberg caused or precipitated the incident." When the evidence is viewed in the light most favorable to Rautenberg,[13] his arguments present questions of fact. As for the remaining arguments presented by Global Parts, those arguments also present questions of fact based on the record before the trial court.[14] There was some

---

[11] The trial court explained in its order that "[D]efendants assert in their motion that they are entitled to summary judgment because there is no evidence of prior substantially similar crimes; no crime was committed against Plaintiff; [and] Plaintiff caused or precipitated the incident . . . Because the Court finds a lack of prior substantially similar crimes, the other claims will not be reached."

[12] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court.")

[13] See *Clark*, 273 Ga. App. at 620.

[14] Compare with *Johns v. Housing Auth. for the City of Douglas*, 297 Ga. App. 869, 872 (678 SE2d 571) (2009) (holding that a tenant's failure to secure her apartment foreclosed the issue of causation as to whether the landlord's failure to provide enhanced security allowed a sexual assault to occur).

evidence that Global Parts rented out its space in a purportedly secure lot to truck drivers like Rautenberg, that it was aware of past similar crimes, and its failures "to have, maintain[,] or repair an operable security gate, operable security camera[,] operable gate access key pad[,] and security guards to prevent an incident of criminal misconduct" may have resulted in Rautenberg's injuries. Thus, the trial court should not have granted summary judgment based on lack of causation in fact.[15]

*Judgment reversed. Coomer, J., concurs. Markle, J., concurs fully and specially.*

---

[15] See *DeMarco v. Ga. Dept. of Transp.*, 320 Ga. App. 324, 325 (739 SE2d 779) (2013) ("Whether proximate cause exists in a given case is a mixed question of law and fact. It requires both factfinding in the 'what happened' sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge."); *Mason v. Chateau Communities, Inc.*, 280 Ga. App. 106, 112-114 (2) (633 SE2d 426) (2006) ("a jury question exists as to whether [the landlord] should reasonably have foreseen a criminal attack against the plaintiff . . . , and whether [the landlord] exercised ordinary care to protect its tenants."). Compare with *Johns*, 297 Ga. App. at 872.

A19A0723.  RAUTENBERG v. POPE et al.                    DO-026


MARKLE, Judge, concurring fully and specially.

I fully concur with the majority's opinion. But I write separately to further

distinguish *Doe v. Prudential-Bache/A. G. Spanos Realty Partners, L. P.*, 268 Ga. 604

(492 SE2d 865) (1997), on which the trial court based its ruling. There, in

determining that a violent sexual crime was not substantially similar to prior property

crimes (and, therefore, foreseeability of the risk had not been established), the

Supreme Court of Georgia examined "the location, nature and extent of the prior

criminal activities and their likeness, proximity or other relationship to the crime in

question." Id. at 605 (citing *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786

(482 SE2d 339) (1997)). The Court found it significant that the location where all of the criminal acts, including the rape at issue, occurred was a common area. Id. at 606. Here, although the crime occurred in a parking lot, it was not a mere common area. Global Parts held itself out as a lessor of parking spots on a secured lot. Moreover, there is some evidence from which it can be inferred that Rautenberg's trucking company chose Global Parts's lot due to the enhanced security features. And, there is evidence of at least one prior burglary that occurred on the premises.

On this record, I concur that there is a genuine issue of fact as to the foreseeability of the harm suffered by Rautenberg.