**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 2, 2023**

# In the Court of Appeals of Georgia

A23A1051. D. L. v. ST. FRANCIS HEALTH, LLC.

FULLER, Senior Judge.

D. L. brought this premises liability action against St. Francis Health, LLC, alleging that it negligently failed to protect her from being raped by three men while she was on a ventilator in St. Francis Hospital's intensive care unit ("ICU"). The trial court granted summary judgment to the hospital, ruling that D. L.'s rape was not foreseeable as a matter of law. We conclude that foreseeability is a question for the factfinder in this case, and we therefore reverse.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.

*Rautenberg v. Pope*, 351 Ga. App. 503, 503 (831 SE2d 209) (2019) (citation and punctuation omitted).

Viewed in this light, the record shows that D. L. was a patient in St. Francis's ICU in January and February of 2020. While there, D. L. was sedated and placed on a ventilator, which rendered her incapacitated and unable to care for herself. At some point during her stay, three men entered her hospital room while she was alone and took turns holding her down and raping her. D. L. testified that she was awake during the incident but was too weak to cry out or fight the men off. Because the men were wearing "uniforms" with "tags" or badges, D. L. believed they were nurses at the hospital, but she did not know their names and could provide only generalized descriptions of them. On a subsequent occasion, two men came to D. L.'s hospital room, showed her a picture of her naked body, and threatened her life. D. L. believed these men were two of the three who had raped her, but she was not certain. D. L. contends that she contracted genital herpes from the assault.

After D. L. was discharged from the hospital, she told her daughter about the incidents and reported them to the police. D. L. later sued St. Francis, asserting claims for premises liability; negligent hiring, retention, and supervision; and negligent

infliction of emotional distress. In the premises liability claim, D. L. alleged that St. Francis "negligently failed to keep its premises safe and prevent foreseeable risk of harm to [D. L.] while she was in a state of sedation."

During discovery, D. L. deposed the St. Francis employee who had served as its ICU nursing coordinator during D. L.'s hospitalization. According to the coordinator, ICU patients and those on ventilators are incapacitated, "can't fend for themselves," cannot get out of bed independently or take care of their personal needs, and require direct supervision. The coordinator agreed that the hospital has "a duty to try to prevent patients from being sexually assaulted." With regard to ICU safety protocols, the coordinator explained that hospital employees use their badges to access the ICU, while non-employees can request entry by using a telephone outside the ICU doors. No log is kept of employees or visitors entering the ICU or individual patient rooms, and hospital personnel were unaware of any security cameras on the floor. And while the ICU is meant to be "very open" so that hospital staff can "have eyes on all the patients all the time," there is no policy about whether doors to patient rooms or the blinds in the windows of those rooms should be open or closed.

3

Also during discovery, St. Francis disclosed five other incidents involving sexual misconduct at St. Francis's facilities that were reported to the hospital in the five years preceding D. L.'s alleged rape:

• In 2015 or 2016, a patient reported that a non-employee physician touched her inappropriately during an exam in the hospital. The patient filed a tort action against a number of defendants, including St. Francis, which was subsequently dismissed from the case.

• In 2017, a patient complained that a nurse "may have potentially penetrated her while she was incoherent from medication" in the hospital. Reports were filed with the police and a governmental protective services agency, after which the patient took no further action.

• In 2019, an employee witnessed a patient engaging in a sexual act with a medical provider at a freestanding St. Francis facility. The employee reported the incident to St. Francis, but the patient filed no complaint and did not report the matter to the police.

• In 2020, a patient alleged that another patient raped her in a bathroom in the emergency room. The matter was "resolved" in an unspecified manner without a lawsuit.

• Also in 2020, a patient claimed that her breast was touched inappropriately while she was getting an MRI at the hospital. No police report was filed, and the patient took no further action.[1]

St. Francis moved for summary judgment on all of D. L.'s claims, and the trial court granted the motion. Regarding the premises liability claim, the trial court ruled that St. Francis was not liable for the intervening criminal acts of D. L.'s alleged rapists because the rape was not reasonably foreseeable. In particular, the court concluded that the other reported sexual incidents were "not substantially similar" to D. L.'s rape; that D. L.'s argument that the hospital's lack of safety protocols encouraged a criminal act was "unconvincing"; and that the hospital had no "reason to anticipate a criminal act like the one [D. L.] alleged she suffered." D. L. appeals, challenging only the court's premises liability ruling.

Under Georgia law, a proprietor owes invitees, such as D. L.,[2] a duty to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-

---

[1] St. Francis also identified a sixth incident, in which a patient stated that the father of her child raped her while she was in labor at the hospital. Because this report was made in 2021, after D. L.'s alleged rape, we do not consider it in our foreseeability analysis.

[2] Hospital patients are considered invitees of the hospital. See generally *Meinken v. Piedmont Hosp.*, 216 Ga. App. 252, 253 (454 SE2d 147) (1995).

1. This duty includes an obligation to "exercise ordinary care to protect invitees from unreasonable risks of which it has superior knowledge." *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 106 (1) (854 SE2d 756) (2021) (citation and punctuation omitted). In general, a proprietor is not liable for damages resulting from an intervening criminal act by a third party unless the act was foreseeable. *Sturbridge Partners v. Walker*, 267 Ga. 785, 785-786 (482 SE2d 339) (1997). "The difficulty arises in determining which criminal acts are foreseeable." Id. at 786.

The Supreme Court of Georgia recently clarified the law in this area, explaining that the "relevant question" is

> whether the totality of the circumstances establish reasonable foreseeability such that the proprietor has a duty to guard against that criminal activity. While evidence of substantially similar prior crimes — crimes with a likeness, proximity, or other relationship to the criminal act at issue that give a proprietor reason to anticipate such an act occurring on the premises — may often be one of the most probative considerations in answering that question, it is not a required consideration, and other circumstances may be relevant, too. And unless the court determines that no rational juror could disagree on the answer, that question is one for the jury.

*Ga. CVS Pharmacy v. Carmichael*, ___ Ga. ___ (II) (C) (Case No. S22G0527, decided June 29, 2023). Thus, foreseeability is generally a matter for the factfinder

6

to resolve through case-specific consideration of the totality of the circumstances. Id. at ___ (II) (A)-(C). There is no "bright-line rule that only certain, specific kinds of evidence must be shown to establish foreseeability." Id. at ___ II (C).

Although evidence of prior crimes is not necessary to establish foreseeability, such evidence — if presented — may be more probative of foreseeability if the prior crimes "(1) happened closer in proximity to the subject premises, (2) happened closer in time to the criminal conduct at issue, (3) happened more frequently, and (4) were more similar to the act that is the subject of the litigation[.]" *Carmichael*, ___ Ga. at ___ (II) (C). But prior criminal conduct need not be identical to establish foreseeability. See *Sturbridge Partners*, 267 Ga. at 786-787 (finding a triable issue as to whether the sexual assault of a tenant inside her apartment at night was foreseeable to the landlord, who had actual knowledge of two prior day-time burglaries of other apartments in the complex); see also *Carmichael*, ___ Ga. at ___ (II) (D) (1) (ruling that the jury was entitled to conclude that a shooting in a drug store parking lot was foreseeable to the proprietor based on prior crimes that, while not factually identical, "all involved confrontational attacks on persons"); *Walker v. Aderhold Properties*, 303 Ga. App. 710, 711, 712-714 (1) (694 SE2d 119) (2010) (reversing the grant of summary judgment on foreseeability where a tenant, who was

raped in her apartment, presented evidence that the landlord knew about three prior burglaries on the premises).

Here, there was evidence of five other complaints made to St. Francis of sexual misconduct that occurred inside the hospital or a freestanding St. Francis building within a few years of D. L.'s alleged rape. All five incidents involved sexual acts against patients under St. Francis's care. Four involved inappropriate touching of a patient by a medical provider. At least two appear to have occurred inside a patient room. And one — in which a nurse allegedly penetrated a patient who was "incoherent from medication" — involved a situation highly comparable to the one presented here, in which D. L. was sedated when she allegedly was assaulted by men appearing to be hospital employees. In fact, as a sedated ICU patient on a ventilator, D. L. likely was more vulnerable than the victim in that prior incident. As the former ICU nursing coordinator recognized, ICU and ventilator patients are highly dependent and in need of protection.

Although the trial court dismissed these prior incidents as "not substantially similar to [D. L.'s] alleged rape," we are mindful of the Supreme Court's recent admonition to avoid being "too rigid" and "too quick to exclude, as matter of law, past crimes as relevant to the foreseeability analysis based on certain differences from

the criminal act at issue . . . without considering whether crimes that were not identical might still put the proprietor on notice of a hazardous condition." *Carmichael*, ___ Ga. at ___ (II) (D) (2). Under the totality of the circumstances, including the number and similarity of the other incidents and the known vulnerability of ICU patients, a jury could conclude that St. Francis had reason to anticipate that a sexual assault of an incapacitated patient might occur in its hospital.

In arguing that D. L.'s alleged rape was not foreseeable, St. Francis cites *Rice v. Six Flags Over Ga.*, 257 Ga. App. 864 (572 SE2d 322) (2002). In *Rice*, the family of a 14-year-old girl brought a premises liability action against the amusement park, alleging that the girl was assaulted by a fellow passenger on a "roller coaster thrill ride featuring multiple inversions while in a locked-down restraint system." Id. at 864, 867. We affirmed the trial court's grant of summary judgment to the park, ruling in relevant part that the four prior criminal acts upon which the plaintiffs relied to prove foreseeability were insufficiently similar. Id. at 866-868. We noted that only one of the previous incidents occurred on a ride, which we described as a "passive" ride that "merely swung riders back and forth in a pendulum-like manner as they faced each other on bench seats." Id. at 867. We concluded that, given the differences between the two rides, the report of the prior incident "d[id] not reasonably suggest

9

a risk of harm of the type which is the subject of [the *Rice*] case." Id. Our decision in *Rice*, however, does not control the outcome here. Pretermitting whether *Rice*'s narrow similarity analysis survives the Supreme Court's recent *Carmichael* decision, the most comparable prior report in this case — the nurse possibly penetrating a sedated patient in a hospital room — is sufficiently similar that the issue of foreseeability cannot be resolved by summary judgment. Further, as discussed above, St. Francis recognizes that its ICU and ventilator patients are especially vulnerable and that it is obligated to protect them.

In sum, we conclude that the trial court erred by deciding, as a matter of law, that D. L.'s alleged rape was not foreseeable. We express no opinion about whether, if a factfinder determines that the alleged rape *was* foreseeable, St. Francis breached its duty to protect D. L., as that issue is not presently before us.

*Judgment reversed. Doyle, P. J., and Gobeil, J., concur.*