A97A0598. CARLOCK et al. v. KMART CORPORATION et al.
(489 SE2d 99)

RUFFIN, Judge.

Shortly before 10:00 p.m. on April 8, 1994, Evelyn Carlock was shot and killed during an attempted robbery in a shopping center parking lot. Evelyn Carlock's surviving spouse and executor of her estate, Frank Carlock, sued two businesses located in the shopping center, Kmart Corporation, doing business as American Fare ("Kmart"), and Super Discount Markets, Inc., doing business as Cub Foods ("Cub Foods"). Carlock alleged that he was entitled to wrongful death and punitive damages due to the defendants' negligence and conscious indifference to consequences in failing to keep the premises safe. The trial court subsequently granted Cub Foods summary judgment on all claims and Kmart partial summary judgment on Carlock's claim for punitive damages. Carlock appeals from those judgments and the trial court's partial grant of a motion in limine excluding expert testimony on the issue of foreseeability of the criminal act. For reasons which follow, we affirm the trial court's grant of summary judgment to Cub Foods and the order in limine, but reverse the grant of partial summary judgment to Kmart.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

1. Carlock's claim against Cub Foods for its alleged failure to keep the premises safe is governed by OCGA § 51-3-1. *Sturbridge*

*Partners, Ltd. v. Walker*, 267 Ga. 785 (482 SE2d 339) (1997). Among other facts that must be shown to prevail on this claim, Carlock must prove that the criminal act was reasonably foreseeable to Cub Foods. See id.; *Whitmore v. First Fed. &c.*, 225 Ga. App. 768 (1) (484 SE2d 708) (1997).

In its motion for summary judgment, Cub Foods showed that it leased the store space from Kmart and opened for business at the location approximately two months before the incident. Cub Foods claimed that there was no evidence in the record showing the criminal act was reasonably foreseeable to Cub Foods. Bearing in mind that it was not Cub Foods' burden to affirmatively disprove Carlock's case, to survive summary judgment Carlock was required to point to specific evidence creating a triable issue on foreseeability. See *Lau's Corp.*, supra.

Although foreseeability can be established through the presentation of evidence of prior similar crimes, see *Whitmore*, supra at 769, and the trial court based its ruling in part on a lack of such evidence, on appeal Carlock points to other evidence which he contends gives rise to a triable issue. Specifically, Carlock cites evidence of a parking lot security patrol hired by Kmart, the landlord, and signs indicating that the property was "protected by Wells Fargo." He contends this evidence showed Cub Foods that there was a need for security devices and, presumably, that the necessity arose due to criminal activity substantially similar to the crime in this case.

Carlock cites no authority in support of this contention, and we do not find that a jury could reasonably infer from the evidence cited that Cub Foods knew the reason why a security patrol was hired or that substantially similar criminal activity had previously occurred in the parking lot. There are numerous reasons why Kmart might have hired a security patrol. Even if crime prevention was a reason for the security patrol in this case, that fact would not necessarily indicate to Cub Foods that crimes were previously committed in the parking lot. Moreover, it would not be reasonable to infer from this evidence that substantially similar crimes occurred in the parking lot. In short, the cited evidence does not show that the crime in this case was foreseeable to Cub Foods.

Carlock also contends that Cub Foods had a duty to investigate the possibility of criminal conduct in the parking lot. Carlock contends that an investigation would have shown that prior robberies occurred in the parking lot. Although Carlock acknowledges in his brief that these robberies occurred before Cub Foods occupied the leased space, he argues that the incidents were known to Kmart and as a result, Cub Foods had a duty to inquire of Kmart about such incidents.

In *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207)

(1995), our Supreme Court found no authority in this state imposing a duty on a property owner to investigate police files to determine whether criminal activities have occurred on its premises. The Court refused to impose such a duty in *Killebrew*, where testimony by the bank's security chief did not establish that the bank's "duty to investigate crimes on its property encompassed seeking out police reports of incidents not reported to the bank." Id. at 109-110.

We likewise refuse to impose a similar duty on Cub Foods in this case. We are aware of no authority requiring a commercial tenant of a shopping center to investigate police files or the files of its landlord to determine whether criminal activities occurred in the parking lot prior to its occupancy. Furthermore, the testimony of Cub Foods' corporate loss prevention manager indicates that Cub Foods never had such a policy. Under these circumstances, we find that no genuine issue of foreseeability exists on this ground. See id.

Finally, Carlock contends that the crime was foreseeable because of the generally recognized danger associated with shopping center parking lots. Although we have found that there is a "generally recognized danger associated with ATMs and night depositories," there is no authority extending this finding to parking lots. *Whitmore*, supra at 770. Indeed, as Carlock states in his brief, it is sad but true that many public areas are all too frequently the scene of criminal activity. In *Whitmore*, we gave special consideration to ATMs because of the "well documented reality" that ATM customers, who are known to be either depositing or withdrawing significant amounts of money outdoors in full public view, are frequently the subjects of robberies. See id.; *Killebrew*, supra at 110 (Sears, Justice, concurring specially). These special circumstances are absent in the instant case.

For the foregoing reasons, we find that Carlock failed to present any evidence creating a triable issue of whether the tragic shooting in this case was foreseeable to Cub Foods. Accordingly, the trial court did not err in granting Cub Foods summary judgment. In light of this ruling, it is unnecessary to address Carlock's two other enumerations asserting error in the trial court's grant of summary judgment to Cub Foods.

2. We do find, however, that the trial court erred in granting Kmart partial summary judgment on Carlock's claim for punitive damages.

Pursuant to OCGA § 51-12-5.1 (b), "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." "The latter expression relates to an intentional dis-

regard of the rights of another [and] knowingly or wilfully disregarding such rights. Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. Negligence, even gross negligence, is inadequate to support a punitive damage award." (Citations and punctuation omitted.) *Ga. Farm &c. Ins. Co. v. Miller*, 222 Ga. App. 95, 96-97 (1) (b) (473 SE2d 189) (1996).

In support of its motion, Kmart points to evidence showing that the parking lot was well lit and that during September 1992, due to employee complaints about property crimes in the parking lot, it retained Wells Fargo Guard Services to patrol the area. The record shows that on the night of the shooting, a Wells Fargo security guard was on duty and patrolled the entire parking lot until 9:00 p.m., when Kmart closed. Pursuant to his duties, however, the security guard then parked his cart in front of Kmart and "stayed in that portion of the parking lot to watch and assist [Kmart] employees as they walked to their cars." The security guard was permitted to leave once all the Kmart employees had left the building, which was usually before 10:00 p.m. On the night of the incident, the security guard was walking to his car when he learned of the shooting.

Carlock contends that, in light of previous parking lot criminal activity known to Kmart, its failure to provide security patrols to Cub Food customers at the time of the shooting raised the presumption of a conscious indifference to consequences. Viewing the evidence in a light most favorable to Carlock, we agree.

The record shows that when Evelyn Carlock finished her shopping at Cub Foods at approximately 9:41 p.m., she returned to her car which was parked in front of Cub Foods, and the attempted robbery and shooting occurred shortly thereafter. Other evidence shows, and Kmart does not dispute, that at the time of the incident it was responsible for maintaining the parking lot in a safe condition. Furthermore, although Cub Foods remained open until midnight, the security guard was required to stop patrolling the parking lot at 9:00 p.m. and focus his attention *solely* on Kmart employees leaving work.

The record further shows that another, arguably substantially similar armed robbery occurred in the same parking lot on August 24, 1992. Like the robbery in this case, the victim of the prior incident was a woman and the incident occurred at approximately 9:45 p.m. when the victim returned to her car after shopping. After the incident, the victim informed the Kmart store manager and other employees of what happened. On December 4, 1992, another female victim had her purse stolen when she returned to her car after shopping. Although there is no evidence a gun was used, she also informed store employees of the robbery. Finally, the record contains a Kmart "Loss Control Statement Form" showing that on September

9, 1993, a third female was the victim of a "purse-snatching" in the parking lot.

In *Walker v. Sturbridge Partners, Ltd.*, 221 Ga. App. 36, 40 (4) (470 SE2d 738) (1996), aff'd 267 Ga. 785 (482 SE2d 339), which also involved a claim that the defendants failed to keep the premises safe, a majority of this Court held that the defendants were entitled to summary judgment on the plaintiff's claim for punitive damages. In *Walker*, the record showed that the plaintiff was raped in her apartment after her assailant gained entry through a rear kitchen window. The record contained further evidence that the rape was foreseeable to the defendants, who were the owners and managers of the apartment complex. Id. at 38-39. Although it was undisputed that the window contained a lock, conflicting evidence was presented concerning whether the lock was broken and, if so, whether the defendants knew it was broken. Id. at 40. Without referring to specific facts, we concluded that the record contained insufficient evidence to support an award of punitive damages.

Turning to the evidence in the instant case, we note initially that, considering the previous armed robbery and the other parking lot robberies involving female victims, there is sufficient evidence for a jury to find that the robbery and shooting in this case were foreseeable to Kmart. See id.; *Sturbridge Partners*, supra. And, though it is true that Kmart showed due regard for the safety of its own customers by providing a security patrol in the parking lot until 9:00 p.m. when Kmart closed, it is uncontroverted that after 9:00 p.m. Kmart provided *no* security to Cub Foods' customers. It is the *intentional and complete absence of security measures* that distinguishes this case from *Walker*, where the uncontroverted evidence showed the existence of a window lock, albeit allegedly broken. In light of the foreseeability of the robbery and shooting in this case, a jury could find that Kmart's decision to completely cease providing security services for Cub Foods' customers at 9:00 p.m., when Cub Foods remained open until midnight and while Kmart continued to provide security to its own employees, showed a conscious indifference to consequences that patrons of Cub Foods might suffer due to the lack of security. In light of such evidence, we find that the trial court erred in granting Kmart summary judgment on Carlock's claim for punitive damages.

3. Finally, Carlock asserts that the trial court erred in granting Cub Foods' motion in limine. The order prohibited Carlock from introducing at trial expert testimony regarding foreseeability of the instant criminal act. The trial court found that the foreseeability issue was "within the province of the jury. . . ."

(a) We note that, contrary to Carlock's contention, this issue was not rendered moot by the grant of summary judgment to Cub Foods.

" 'A controversy is justiciable when it is appropriate for judicial determination. It must be definite and concrete, touching the legal relations of parties having adverse legal interests, rather than being hypothetical, abstract, academic or moot.' " *Bd. of Trustees &c. v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720) (1984). A motion is moot "when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." Black's Law Dictionary (5th ed. 1979). See also *Chastain v. Baker*, 255 Ga. 432, 433 (2) (339 SE2d 241) (1986) (" 'A moot [issue] is one which seeks to determine an abstract question which does not arise upon *existing* facts or rights.' (Emphasis supplied.) Black's Law Dict. (Revd. 4th ed.)").

Although the motion in limine at issue was filed by Cub Foods, it affected the interests of both defendants in that it sought to prohibit the introduction of expert testimony concerning the foreseeability of the shooting. While the issue of foreseeability is now academic in the controversy between Carlock and Cub Foods, there still remains a justiciable issue of foreseeability between Carlock and Kmart. Accordingly, because the trial court's order in limine will have a practical effect on the existing controversy between Carlock and Kmart, the issue presented is not moot, and we now consider its merits.

(b) Upon consideration, we find no error in the trial court's partial grant of the motion in limine. " 'Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. . . . However, it is equally clear that the scope of what is admissible as expert opinion testimony is not unlimited. It is the established rule in Georgia, that where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony. A party may not bolster his (case) as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others.' [Cit.]" *Baxter v. Melton*, 218 Ga. App. 731, 732 (463 SE2d 53) (1995) (physical precedent only). Furthermore, because the admission of such evidence, including a trial court's ruling on a motion in limine, is a matter resting within the sound discretion of the trial court, we will not disturb the trial court's ruling absent evidence of abuse. *Boyett v. Webster*, 224 Ga. App. 843, 844 (1) (482 SE2d 377) (1997).

Here, the trial court excluded expert testimony *only* on the issue of whether the criminal act was foreseeable to Kmart, and Carlock argues that the court erred because prior opinions of this Court show

that expert testimony has been admitted to address the issue of foreseeability. However, the cited cases are distinguishable in that the use of the expert testimony in those cases was not challenged on appeal. Accordingly, any abuse of discretion that may have occurred in admitting the testimony was not an issue, and those cases are not authority showing the trial court abused its discretion in this case.

We further find that the determination of foreseeability under the facts of this case is not one which requires expert testimony. Rather, under the facts presented, the trial court did not abuse its discretion in finding that the jurors would be capable of determining whether the attempted robbery and shooting were foreseeable to Kmart. See *Baxter*, supra. As to other issues that might be properly addressed with expert testimony, the trial court expressly reserved ruling until the time of trial.

*Judgment affirmed in part and reversed in part. Pope, P. J., Johnson and Eldridge, JJ., concur. Andrews, C. J., Birdsong, P. J., and Blackburn, J., concur in part and dissent in part.*

BIRDSONG, Presiding Judge, concurring in part and dissenting in part.

Although I concur fully with Divisions 1 and 3 of the majority opinion, I cannot agree that the trial court erred by granting summary judgment to Kmart on Carlock's claim for punitive damages. Accordingly, I must dissent to Division 2 of the majority opinion.

Under our punitive damages law, punitive damages could only be awarded in this case if Carlock can prove, by clear and convincing evidence, that Kmart's actions showed wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences. See OCGA § 51-12-5.1 (b); *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (365 SE2d 827). Further, negligence alone, even gross negligence, will not support a punitive damage award. *Assoc. Health Systems v. Jones*, 185 Ga. App. 798, 802 (366 SE2d 147). Something more than the commission of a tort is always required. " ' "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." ' " *Cullen v. Novak*, 201 Ga. App. 459, 460 (411 SE2d 331), citing *Colonial Pipeline*, supra at 121-122. Further, "conscious indifference to consequences relates to an intentional disregard of the rights of another, knowingly, or wilfully disregarding such rights." (Punctuation omitted.) *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860 (1) (389 SE2d 355). There must be evidence of culpable conduct to support the award of punitive damages. *Colonial Pipeline*, supra; *Troutman v.*

*B. C. B. Co.*, 209 Ga. App. 166, 168 (433 SE2d 73).

In this appeal Carlock and the majority rely upon Kmart's knowledge of certain criminal activity in the parking lot (an armed robbery in August 1992, and purse snatchings in February 1991; December 1992; and September 1993) and Kmart's failure to provide security patrols for Cub Foods' customers after Kmart's closing time to create a jury issue on the presumption of a conscious indifference to consequences. Even though I agree that this evidence may be sufficient to create a jury issue on whether Kmart is liable for damages arising from Mrs. Carlock's death, I cannot agree that this evidence is sufficient to constitute clear and convincing evidence of Kmart's "entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

There is no evidence showing that Kmart had knowledge that its failure to provide security patrols after its store closed made persons in the parking lot subject to attacks by armed robbers yet refused to do anything about it. There also is no evidence that Cub Foods or anyone else ever asked Kmart to provide increased security after Kmart's closing and that Kmart refused.

More significantly, the evidence shows that the crimes Carlock and the majority rely upon did not occur after the Kmart security patrol ceased to operate for the night. Two of the crimes occurred before Kmart started providing security in September 1992: The affidavit of the first victim states only that her purse was stolen on February 11, 1991, and does not provide a time, and the affidavit of another victim states that about 9:45 p.m., August 24, 1992, she was the victim of an armed robbery. Although the other two crimes occurred after Kmart started providing a security patrol, the evidence shows that these purse snatchings occurred around 8:00 p.m. on December 4, 1992, and around noon on September 9, 1993. As these crimes occurred before the security patrol quit for the night, they are not events from which it can be inferred that a security patrol was needed after Kmart closed.

Consequently, these events are not sufficient to show that the security patrol provided by Kmart was inadequate and that Kmart wantonly and consciously refused to provide additional or increased security. Thus, there is no evidence, much less clear and convincing evidence, sufficient to create a jury issue on whether Kmart was guilty of any conduct which would establish the entire want of care or indifference to consequences that would authorize the imposition of punitive damages. *Bradford v. Xerox Corp.*, 216 Ga. App. 83, 84 (453 SE2d 98); *Troutman v. B. C. B. Co.*, supra at 168. Accordingly, I cannot agree that the trial court erred by granting summary judgment to Kmart on the issue of punitive damages.

I am authorized to state that Chief Judge Andrews and Judge

Blackburn join in this opinion.

DECIDED JULY 15, 1997 —

*Lawson, Davis & Pickren, G. Thomas Davis, Paul R. Jordan,* for appellants.
*Drew, Eckl & Farnham, George R. Moody, Francis E. Wiggers, Jr., Mary B. Galardi,* for appellees.