A11A0793. RAINES et al. v. MAUGHAN et al.
(718 SE2d 135)

BLACKWELL, Judge.

After her son was murdered during an apparent robbery in the parking lot of the Venetian Hills apartment complex in Atlanta, Carrie Raines brought this wrongful death action against John Maughan, the owner of the complex, alleging that Maughan breached a duty to keep the premises safe.[1] The case was tried by a Fulton County jury, which returned a verdict for Maughan, and

---

[1] Raines filed this lawsuit on behalf of both herself and the estate of her son, and she sued Maughan both individually and as the proprietor of the Venetian Hills complex. For the purposes of this appeal, we will refer to the plaintiffs — both Raines and the estate of her son — as "Raines." And we will refer to the defendants — both Maughan individually and the sole proprietorship through which he operated the complex — as "Maughan."

Raines now appeals. Raines contends that the trial court erred when it failed to excuse a prospective juror for cause, refused to admit certain evidence, charged the jury to apportion any damages under OCGA § 51-12-33, and refused to give two instructions that Raines requested. We see no reversible error and affirm.

1. We first consider the claim that the trial court should have excused a prospective juror for cause. The prospective juror in question, a nephrologist, was asked in voir dire about his views on tort reform, and he responded that he thought negligence should be proven clearly and damages in negligence cases ought to be capped. But when he was asked whether he would follow the instructions of the court, even to the extent that they might differ from his own view of how negligence cases should be tried, the nephrologist said that he "absolutely" would do so. Raines later moved the court to excuse the nephrologist for cause, arguing that the nephrologist could not be believed when he said that he would follow the instructions of the court. The nephrologist was not worthy of belief, Raines said, because he failed to disclose on his written juror questionnaire that he was a physician and failed to raise his hand in response to a preliminary question about tort reform that Raines put to the whole panel. The trial court refused to excuse the nephrologist for cause, and Raines eventually used a peremptory strike to excuse him.

Whether to excuse a prospective juror for cause is committed to the sound discretion of the trial court, *Pinckney v. State*, 285 Ga. 458, 460 (3) (678 SE2d 480) (2009), and we see no abuse of that discretion here. In the first place, no written juror questionnaire appears in the record, so we do not know whether the nephrologist failed to disclose his profession on the questionnaire, but the record does show that he identified himself as a physician when the whole panel was asked in preliminary questioning whether any physicians were among the prospective jurors. And about the contention that the nephrologist was not forthcoming during the preliminary questioning about his views on tort reform, we note that Raines asked the panel first whether any prospective juror "believe[s] there is something wrong with our civil justice system that needs to be fixed through tort reform," and then, before all of the prospective jurors responded, asked a different question, whether any prospective juror "doesn't believe we need reform." We cannot say that the failure of the nephrologist to volunteer at that point that he had a view on tort reform is any more suggestive of dishonesty than confusion in response to these contradictory questions. In any event, we have said before that

[a] trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, consider-

> ing that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of [his] demeanor and countenance, not just the words that [he] speaks.

*Harrison v. State*, 309 Ga. App. 454, 454 (1) (711 SE2d 35) (2011). We have no reason in this case to question the determination of the trial judge that the nephrologist was credible when he promised to follow the instructions of the court, and the claim that the trial court abused its discretion when it failed to excuse him for cause is without merit.

2. We turn next to the claims that the trial court erred when it refused to admit certain evidence. "Whether to admit evidence is a matter resting in the trial court's sound discretion," and we will reverse a decision admitting or refusing to admit evidence only upon a showing that the trial court has abused its discretion. *Boring v. State*, 289 Ga. 429, 433 (2) (711 SE2d 634) (2011) (citation and punctuation omitted); see also *Hankla v. Jackson*, 305 Ga. App. 391, 392 (1) (699 SE2d 610) (2010). We see no abuse of discretion here.

(a) Raines complains that the trial court should have admitted evidence of a carjacking that occurred on a street that runs, Raines says, near the Venetian Hills complex.[2] Maughan owed a duty to make reasonable efforts to protect Raines's son against the criminal acts of a third party only to the extent that those criminal acts were foreseeable, see *Vega v. La Movida, Inc.*, 294 Ga. App. 311, 312 (1) (a) (670 SE2d 116) (2008), so Raines had to prove at trial that the murder of her son was foreseeable. One way of proving that a crime is foreseeable is by proof that substantially similar crimes previously had been committed at or around the same location. See *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997); see also *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 547 (3) (a) (659 SE2d 905) (2008). The carjacking was a substantially similar crime, Raines says, and she claims that the refusal of the trial court to admit evidence of the carjacking was an abuse of its discretion. We disagree.

When a court considers whether criminal acts are substantially similar for the purpose of assessing foreseeability in a premises liability case, "the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question." *Sturbridge Partners*, 267 Ga. at 786 (citations omitted). Although the criminal acts need

---

[2] The record does not reflect the distance between the Venetian Hills complex and the location of the carjacking, but Maughan tendered an affidavit on the question of distance, in which he averred that the street on which the carjacking occurred is not adjacent to the complex and, in fact, is not "near" the complex.

not be identical, they must be similar enough that knowledge of the first would have drawn the attention of the landowner to the dangerous condition that ultimately led to the criminal act that forms the basis for the premises liability claim. See id. Raines sought in this case to admit evidence of a carjacking that involved a car driving on a public street, an unknown distance from the Venetian Hills complex. This car was rammed by a second car, from which a passenger alighted with a gun, put the gun in the face of the woman driving the first car, and forced her from the first car. The gunman then drove away with the first car. Although the carjacking and the murder of Raines's son are similar in some respects, there are important differences too, especially that the carjacking occurred on a public street and in a location of unknown proximity to the Venetian Hills complex. In light of these differences, we cannot say that the trial court abused its discretion when it refused to admit evidence of the carjacking. See *Vega*, 294 Ga. App. at 314 (1) (a) ("[G]enerally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question.") (citation and punctuation omitted); see also *McCoy v. Gay*, 165 Ga. App. 590, 592 (302 SE2d 130) (1983) (robberies that occurred near hotel building were not substantially similar to robbery in hotel parking lot).

(b) Raines also contends that the trial court should have permitted her expert on security practices to testify about the content of certain service call lists, on which the expert had relied in forming his opinions about the adequacy of security at the Venetian Hills complex. According to the record, these service call lists reflect all requests for police officers to respond to the Venetian Hills complex and other locations within one mile of the complex in the five years preceding the murder of Raines's son and show more than 5,800 requests for police assistance. With respect to requests originating in the complex itself, the lists include a unique incident number for each request, a numeric code indicating the nature of each request, and the date and location of each request. For requests originating outside the complex, the lists include an incident number, beat number, street address, and general description for each request and, confusingly enough, multiple dates and times and an unidentified code for each request. Although the trial court allowed that the expert properly could base his opinions on these lists, the court refused to admit the lists themselves or testimony about their content, noting that the lists contain multiple layers of hearsay, references to incidents of questionable or no relevance, and numerous unexplained codes and data.

An expert properly may base his opinion on inadmissible facts

and data, so long as those facts and data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." See OCGA § 24-9-67.1 (a); see also *Roebuck v. State*, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003). But the inadmissible facts and data upon which an expert relies are not rendered admissible simply because an expert has relied upon them. To the contrary, such facts and data remain inadmissible "unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." OCGA § 24-9-67.1 (a). The trial court in this case weighed the probative value of the content of the service call lists and their prejudicial effect, and we cannot say that its determination that the service call lists should not be admitted was an abuse of discretion. Raines has made no showing that the circumstances of the various incidents reflected on the lists are substantially similar to the murder of her son, such that they would bear directly upon the question of foreseeability. See *Grandma's Biscuits, Inc. v. Baisden*, 192 Ga. App. 816, 817-818 (1) (386 SE2d 415) (1989) (prior crimes on premises that were included on police computer printout not shown to be substantially similar to crime at issue). Moreover, the lists are confusing, and substantial explanation would have been required for the jury to understand them.[3] These reasons are enough to warrant the exclusion of the content of the service call lists.

(c) Finally, Raines argues that the trial court should have permitted her expert at trial to opine that the murder of her son was foreseeable and that security deficiencies at the complex were the proximate cause of his death. We have explained before that "[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves," or, put another way, where "the conclusion is beyond the ken of the average layman." *Carlock v. Kmart Corp.*, 227 Ga. App. 356, 361 (3) (b) (489 SE2d 99) (1997) (citations and punctuation omitted); see also *Thurman v. Applebrook Country Dayschool, Inc.*, 278 Ga. 784, 787 (2) (604 SE2d 832) (2004). But "where the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and . . . the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." *Carlock*, 227 Ga. App. at 361 (3) (b). In other words, an expert cannot opine on the ultimate issue when the jury could reach the same conclusion on its own. See id.

---

[3] We also note that Raines was permitted to present evidence of several specific criminal acts that occurred in and around the complex prior to the murder of her son.

In *Carlock*, a woman was killed in an attempted robbery in the parking lot of a shopping center, and her husband sued several businesses located in the shopping center, alleging that they failed to keep the premises safe. This Court affirmed the refusal of the trial court to admit expert testimony that the attempted robbery and murder were foreseeable. See id. at 356. We agreed that expert testimony was not necessary for the jury to assess foreseeability in those circumstances. Id. at 362 (3) (b). This case is similar to *Carlock*, and we think that the jury in this case, having heard evidence of numerous prior criminal acts that occurred in or around the complex, was capable of deciding the question of foreseeability without expert testimony on the ultimate issue.[4] At the least, it was within the discretion of the trial court to determine that no expert testimony on the question of foreseeability was required.

Raines also claims that her expert should have been permitted at trial to opine that security deficiencies at the complex were a proximate cause of the death of her son, but she cites no authority in support of this contention. Her expert was allowed to opine that the security measures at the complex were inadequate and deficient. With this testimony, the jury was quite capable of deciding whether the deficiencies were a proximate cause of the death of Raines's son, or at least the trial court was entitled to so determine. The trial court did not abuse its discretion when it refused to admit expert opinions about foreseeability and proximate cause.

3. We next consider the claim that the trial court erred when it instructed the jury that, if it concluded Maughan was liable for the death of Raines's son, it should consider whether to apportion its damages award between Maughan and the unknown individuals who murdered Raines's son. To demonstrate reversible error, Raines must show both that the trial court erred and that the error was harmful. *Kersey v. Williamson*, 284 Ga. 660, 663 (3) (670 SE2d 405) (2008); *Clark v. Stafford*, 239 Ga. App. 69, 74 (3) (522 SE2d 6) (1999). The jury in this case returned a verdict for Maughan, and there was no occasion for the jury to apportion damages. For this reason, any error in charging the jury about apportionment had no effect on the outcome of the trial and could not have harmed Raines, and we need not consider, therefore, whether instructing the jury on apportionment in this case actually was error.[5]

---

[4] Raines relies on our decision in *Brookview Holdings v. Suarez*, 285 Ga. App. 90 (645 SE2d 559) (2007), but we think her reliance is misplaced. *Brookview Holdings* is a summary judgment case, and it did not address or decide whether expert testimony on the issue of foreseeability could be admitted at trial. 285 Ga. App. at 95-97 (2).

[5] In *Pacheco v. Regal Cinemas*, 311 Ga. App. 224, 228 (2) (b) (715 SE2d 728) (2011)

4. We turn last to the contention that the trial court erred when it refused to give two jury charges that Raines requested, one on substantial similarity, the other on foreseeability. We note that the trial court charged the jury on both of these principles, and although Raines says that the refused charges about which she complains are not duplicative of the charges actually given, she does not identify any differences between the charges refused and those given or explain the significance of any such differences. Indeed, her entire argument on these jury charges consists of one sentence in her briefs: "Both charges [refused by the trial court] are accurate statements of Georgia law[ ], are not duplicative, and are adjusted to the facts of this case." Our rules warn that "[a]ny enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned," Court of Appeals Rule 25 (c) (2), and we conclude that Raines has abandoned her claim that the trial court erred when it refused these jury instructions.

*Judgment affirmed. Adams, J., concurs. Barnes, P. J., concurs specially.*

BARNES, Presiding Judge, concurring specially.

While I agree with the result reached in this case, I do not agree with all that is said. Therefore, this opinion decides only the issues in this case and may not be cited as binding precedent.[6]

DECIDED NOVEMBER 1, 2011 — 

*D. Richard Jones III, Julie A. Dlott*, for appellants.

*Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, Wayne S. Melnick*, for appellees.

---

(physical precedent only for Division (2) (b)), a panel of this Court addressed similar claims of error concerning a jury instruction on apportionment in a case in which a defense verdict was returned. There, we found no error.

[6] "Judgment as Precedent. If an appeal is decided by a Division, a judgment in which all three judges fully concur is a binding precedent; provided, however, an opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said. . . ."